The People of the State of New York ex rel. Corn Hill Realty Company, Appellant, v. William L. Stroebel, as Superintendent of Buildings of the City of Utica, Respondent.

Utica (city of) — construction and validity of ordinance prohibiting the maintenance and conduct of a public garage without permission of the superintendent of buildings.

An ordinance of the city of Utica (No. 215, sec. 1) provides that "No person, firm or corporation shall hereafter maintain or conduct a public garage for the storing, maintenance, keeping, caring for or repairing of automobiles or motor vehicles within the city limits, without permission of the superintendent of buildings." *Held*, that while the ordinance forbids the *maintenance or conduct* of a public garage, it does not prohibit the *erection* of a building which, although adapted to such a use, could be used for other purposes not forbidden, there being no satisfactory evidence of an intention to use it as a garage.

*People ex rel. Corn Hill Realty Co.* v. *Stroebel*, 156 App. Div. 457, reversed.

(Argued October 21, 1913; decided November 18, 1913.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 3, 1913, which dismissed a writ of certiorari and confirmed the determination of the defendant denying the relator's application for a building permit.

The facts, so far as material, are stated in the opinion.

*G. C. Morehouse* for appellant. An unreasonable ordinance or one oppressive to trade and commerce, enacted even under a "specific" power to enact, is void. (*Ford* v. *Standard Oil Co.*, 32 App. Div. 596; *Brooklyn R. R. Co.* v. *Brooklyn*, 37 Hun, 413; *People* v. *Jarvis*, 19 App. Div. 466; *Eckhardt* v. *Buffalo*, 19 App. Div. 1; *Fire Dept.* v. *Gilmour*, 149 N. Y. 453; *Matter of Jacobs*, 98 N. Y. 98.) The legislature cannot arbitrarily declare a building to be a nuisance and prohibit its erection because it may, at some time or in some manner, be used thereafter as a public garage, the building itself not being *per se* a nuisance. (*Colon* v. *Lisk*, 153 N. Y. 188; *Yates* v. *Milwaukee*, 10 Wall. [U. S.] 497; *People* v. *Wilber*, 198 N. Y. 1; 1 Dillon on Mun. Corp. [4th ed.] § 379; *People* v. *Murphy*, 129 App. Div. 260; 195 N. Y. 126.) Assuming that the proposed building may be used as, or be convertible into, a public garage, the common council or even the legislature cannot prohibit the erection of such a building within the city limits. (*People* v. *Wilber*, 198 N. Y. 1; *Sherman* v. *Levingston*, 128 N. Y. Supp. 581; *People* v. *Murphy*, 195 N. Y. 126; *Fisher Co.* v. *Woods*, 187 N. Y. 90; *Wynehamer* v. *People*, 13 N. Y. 378; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 N. Y. 377; *People* v. *Gillson*, 109 N. Y. 389; *Buffalo* v. *Collins Bakery Co.*, 57 N. Y. Supp. 347.)

*Seward A. Miller, Corporation Counsel*, for respondent. The ordinance was a reasonable one. (McQuillan on Mun. Corp. § 910; *Newton* v. *Joyce*, 166 Mass. 83; *Longmaid* v. *Reed*, 159 Mass. 409; *Coker* v. *Birge*, 9 Ga. 425; *Adams* v. *Gillig*, 131 App. Div. 494; 199 N. Y. 314; *People* v. *Reicherter*, 128 App. Div. 676.) The ordinance is valid. (*City of Rochester* v. *West*, 164 N. Y. 510; Dillon on Mun. Corp. § 665; *People* v. *Gillson*, 109 N. Y. 389, 398; *Village of Carthage* v. *Frederick*, 122 N. Y. 268, 276; McQuillan on Mun. Corp. § 911; *People ex rel. Armstrong* v. *Warden*, 183 N. Y.

436   People ex rel. C. H. Realty Co. v. Stroebel.

[209 N. Y.]          Opinion, per Werner, J.          [Nov.,

223; *People ex rel. Nechamcus* v. *Warden,* 144 N. Y. 529; *Matter of Whitton,* 152 App. Div. 506; *People* v. *Davis,* 78 App. Div. 570; *Griffin* v. *City of Gloversville,* 67 App. Div. 403; *People ex rel. Kemp* v. *D'Oench,* 111 N. Y. 359; *People ex rel. Liberman* v. *Vandercar,* 175 N. Y. 440; *City of Rochester* v. *Macauley-Fein Co.,* 199 N. Y. 207; *Fifth Ave. Stage Co.* v. *City of New York,* 194 N. Y. 19; *Cronin* v. *People,* 82 N. Y. 318.)

Werner, J.   On the 10th of September, 1912, the relator applied to the superintendent of buildings of the city of Utica for permission to erect a building on Clinton place. The dimensions of the building were stated to be as follows: 110 feet wide, about 122 feet long and about 16 feet high, and it was to be placed on a lot 120 feet in width by 200 feet in depth. The application states that the building is " to be used and occupied for buying, selling, dealing in and otherwise disposing of vehicles, automobiles, motor cycles and other personal property."

The record contains a number of ordinances of the city of Utica which are pertinent to such matters as the authority of the superintendent of buildings, the character of the structures to be erected under his supervision, and the conditions which must be complied with by an applicant for a building permit, but there is only one which, in our view of the case, need be quoted. This particular ordinance provides that "No person, firm or corporation shall hereafter maintain or conduct a public garage for the storing, maintenance, keeping, caring for or repairing of automobiles or motor vehicles within the city limits, without permission of the superintendent of buildings." (No. 215, sec. 1.) There are other provisions of the same ordinance, but they are purely incidental to the real question at issue, and it would serve no useful purpose to refer to them at length. It is enough to say that the superintendent of buildings refused to issue a building permit to the relator because, to quote

People ex rel. C. H. Realty Co. *v.* Stroebel.    437

1913.]            Opinion, per Werner, J.            [209 N. Y.]

the superintendent's own language, "it manifestly appeared from an inspection of the application and plans submitted therewith, that the fair intention of the plans and specifications was to erect, maintain and conduct a public garage."

In view of the peculiar phraseology of the ordinance above quoted (No. 215, sec. 1), and of the specific ground upon which the respondent refused the relator's application for a building permit, we have reached the conclusion that the respondent's determination, and the order of the Appellate Division affirming it, are not sustained by the record now before the court. It will be noted that the ordinance forbids the *maintenance or conduct*•of a public garage. It does not prohibit the *erection* of a building which, although adapted to such a use, could be used for other purposes not forbidden. In these circumstances we must look to the relator's application and to the other evidence in the record to ascertain what there is to support the respondent's conclusion that it was the relator's intention to erect, maintain and conduct a public garage. The relator's application, in and of itself, discloses no such intention. On the contrary, the statement is that the building is to be "used and occupied for buying, selling, dealing in and otherwise disposing of vehicles, automobiles, motor cycles and other personal property." In this description of the purposes for which the relator's proposed building is to be used, we find nothing that is within the prohibition of the ordinance. There is nothing in the ordinance which purports to limit the right to erect and occupy buildings for the sale of vehicles, automobiles and motor cycles, and, it may be said in passing, any attempt to exercise any such power would be unconstitutional, for the business of selling such vehicles is as lawful as the sale of groceries or dry goods. When we turn to the record for further evidence upon the subject, we fail to find any that is satisfactory. There is a blue print of the floor plan of

the proposed building, and there are the building specifications, but neither of these furnish any evidence that the building is to be used as a public garage. From the general description of the building, and the text of the specifications, we can do no more than to conjecture that the building may possibly be intended for use as a public garage. That is not enough. The trouble with this record is that we have not before us all the evidence that the respondent had before him when he considered and disposed of the relator's application. The respondent had access to the full plans and detailed drawings. These may have shown conclusively that the building was designed exclusively for a public garage, but they are not before us and we have no means of determining what they disclosed. In view of this state of the record we must reverse the order of the Appellate Division and the determination of the superintendent of buildings, without attempting to decide whether the enactment of the ordinance in question was a constitutional exercise of municipal authority. That question may be more fairly and fully presented in an action for an injunction if the relator does anything which may bring it within the condemnation of the ordinance.

The order of the Appellate Division and the determination of the superintendent of buildings herein are each hereby reversed, with costs in both courts to the appellant.

CULLEN, Ch. J. I concur in the opinion of WERNER, J., but I am inclined to go further and hold that the respondent had no right to refuse the permit for the construction of the building, even though the owner did contemplate its use for the purpose of a public garage. The building was to be constructed on the relator's own property, and he had the right to erect on his land any structure he saw fit unless the structure was in violation of law or a nuisance. The ordinance in question,

assuming its validity, is applicable only to the use of structures. It in no sense affects the right to erect structures. It is not pretended that the building itself can constitute a nuisance, but solely the use of it. A man may erect a building and fit it up with a bar and saloon fixtures, even though he has obtained no license to sell liquors on the premises. He may hope to thereafter obtain a license. If his expectations are disappointed he cannot use the premises for the sale of liquor, but that will not render the structure itself in any degree unlawful. So here *non constat* after the building is erected the relator may comply with the requirements of the ordinance and obtain leave to conduct a public garage. True, he also may fail in his expectations, but that cannot render his structure illegal. The validity of the ordinance is also subject to some doubt. Assuming that the city may forbid the use of a building within limits as a garage for a great number of automobiles, the ordinance does not limit the number of cars to be kept, but the test is whether the garage is a private one or a public one. I do not see how the danger to surrounding property is greater in one case than in the other, provided the number of cars permitted is the same. In the case relied upon by the counsel for the respondent (*City of Newton* v. *Joyce*, 166 Mass. 83) a statute (it was not an ordinance) forbade the use of a building as a stable within certain parts of the city limits for more than four horses. It did not assume to differentiate between a private one and a livery stable. In the case of *Langmaid* v. *Reed* (159 Mass. 409) the question was as to the violation of a covenant forbidding a livery stable, not as to the validity of an ordinance.

GRAY, COLLIN, CUDDEBACK, HOGAN and MILLER, JJ., concur with WERNER, J., and CULLEN, Ch. J., concurs in memorandum.

Order reversed, etc.