CLARENCE E. STUBBS, Inspector of Buildings, &c.,

*vs.*

WALTER SCOTT.

*Building permits: character of buildings; character of neighborhood. Mandamus: uses other than applied for.*
*Fraud upon court.*

The authority to enact and enforce building regulations rests on the ground that it is a part of the police power.　　　p. 90

An application for a building permit, for the erection of a store building, for general business purposes, can not be legally refused, merely because there are no other stores in the block, and because the other buildings were fine and costly dwellings.
　　　　　　　　　　　　　　　　　　p. 90

To obtain by a mandamus a building permit, for the erection of store buildings for general business purposes, and afterwards use the building for a lawfully forbidden use, and one for which an earlier application had been properly refused, would be a fraud on the court that issued the mandamus, and should be promptly checked.　　　　　　　　　　p. 93

*Decided November 11th, 1915.*

Appeal from the Superior Court of Baltimore City. (Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*S. S. Field, the City Solicitor of Baltimore City,* for the appellant.

*Randolph Barton* and *James J. McGrath,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Superior Court of Baltimore City directing a mandamus to issue against the Inspector of Buildings of Baltimore City, requiring him to issue to the appellee a permit to erect a building on the lot described in the proceedings. The petition alleges that in February, 1915, the petitioner, "desiring to erect and conduct a sales-room and service station for the sale of automobiles, and for the other purposes incident to the business of such establishments," applied to the respondent for a permit to erect a building suitable for the said business on a lot of ground situated on the east side of St. Paul street in said City, but the permit was not granted; that subsequently petitioner, "being still anxious to secure a location on said lot for the sale of automobiles, abandoned the idea of establishing a service station at the place named, and purchased said lot of ground from the owners of the same and now owns said property."

Paragraph 4 of the petition is as follows: "Your petitioner now represents that he has filed his application with the above named defendant in his official capacity (a copy of which he herewith files, marked 'Petitioner's Exhibit S. W. No. 1½') in compliance with the ordinance of the Mayor and City Council of Baltimore, and of the laws in such cases made and provided, for a permit to erect on said lot four stores for general business purposes, in accordance with the provisions of the plat and specifications herewith filed, marked,

as to said plat 'Petitioner's Exhibit W. S. No. 2,' and as to said specifications 'Petitioner's Exhibit W. S. No. 3.' That your petitioner proposed to use one of said stores for the purpose of exposing for sale, and for selling automobiles. That the other stores he proposes to rent or if it proves to be expedient so to do, to sell them when they will be used for such purposes as stores so located may be profitably used."

The petition then alleges that the defendant refused to issue said permit, "and thereby your petitioner is restrained and prevented from disposing of his property and availing himself of his right to use it;" that the reason given for the refusal to grant the permit is set out in a letter filed, and the petition concludes by praying the Court to issue the writ of mandamus, directed to the defendant, "requiring him to issue to your petitioner the building permit in such cases made and provided."

The answer alleges, amongst other things, that respondent refused to issue the permit because he is advised that the issuance of it would not be in accordance with the law in such cases made and provided. The attorneys for the appellee wrote to Mr. Stubbs the following letter, before the petition was filed:

"June 15, 1915.

"Clarence E. Stubbs, Esq.,

"Inspector of Buildings, City Hall.

"Dear Sir—Mr. Walter Scott has heretofore filed with you his application for a permit to erect a building on the east side of St. Paul street between Preston and Mount Royal avenue. On his behalf we write to ask you if you would be kind enough either to make out the permit, or if you propose to reject it, to give the reasons for your objection, in order that he shall have opportunity to meet those objections as promptly as possible.

"Very respectfully,

"Barton, Wilmer & Stewart,

"Attorneys for Walter Scott."

Mr. Stubbs replied as follows:

"June 15th, 1915.

"Messrs. Barton, Wilmer & Stewart,

"Attorneys for Walter Scott.

"Gentlemen—Replying to your letter of even date, with reference to application made by Walter Scott for the erection of building on the east side of St. Paul street, between Preston and Mount Royal avenue, beg to advise, that being this neighborhood is a strictly residential section, with no stores or buildings in said block or the block south of same, being used for purposes other than residential purposes, after taking this matter up with his Honor the Mayor, we are of the opinion that no permit should be granted for a store building in this neighborhood. Therefore, for the reasons above stated, we must decline the issuing of said permit.

"Very truly yours,

C. E. Stubbs,

"Inspector of Buildings."

Paragraph 12 of section 47 of the Building Code, as amended by Ordinance No. 32, approved November 28, 1911, provides that "The following buildings shall be limited as to location," and then follows a list of twenty-four buildings, &c.—the fifth of which is as follows: "5. Garages, automobile stations, or the places for the keeping of vehicles of any kind which are propelled by motive power, the intention of which is for any other purpose than the housing of not more than two machines or vehicles to be used for private purposes only by the person or persons occupying the same lot on which such structure is desired."

Paragraph 13 provides that: "No permit shall be given by the Inspector of Buildings for the erection of any such buildings without the approval of the Mayor, and, if such erection be approved by him, there shall be incorporated in the permit therefor such regulations regarding the location of said building as may be necessary, in the judgment of the

Mayor, to properly safeguard the interests of the public," and it then goes on to require notice of the application to be published in two daily newspapers, &c.

Cases of this character often present questions of difficulty. It is necessary to vest in the authorities of municipal corporations certain powers in reference to the regulation of buildings, the exercise of which may sometimes work hardships on owners of properties, proposed to be improved, and on the other hand, those who have already expended large sums of money may sustain injury by improvements made by others of a character which are objectionable and undesirable in such a neighborhood. The authority to enact and enforce building regulations rests on the ground that it is a part of the police power, but even that power, broad as it is, has its limits. But we do not feel called upon in this case to determine how far the regulations of the various kinds of buildings mentioned in this ordinance may be enforced, for it seems to us that the real question in the case is whether the appellee can be deprived of the right to improve his lot by the erection of stores, upon the ground that the proposed building does not conform to the character of buildings in that immediate neighborhood. The learned counsel for the appellant takes the position that the record shows that "The buildings are really intended for a garage, and that calling them stores is a mere subterfuge to get around the ordinance which lodges the discretion in the Mayor in regard to granting permits for garages." But the petition does not ask for a permit for a garage, and the respondent based his refusal, in the letter to the attorneys for the appellee, on the distinct ground that no permit should be granted for a store building in that neighborhood.

In his testimony, after speaking of the refusal to grant a permit for a garage under the application first made by the appellee, Mr. Stubbs was asked: "Tell his Honor why the second application, the one in controversy, was declined?" and he replied: "Several of the people who protested against

the original application, the first application, protested against the second application, although the application called for the erection of stores. They protested against the issuing of a permit for the erection of that kind of building in that neighborhood, and after taking the same up with his Honor, the Mayor, the Mayor advised me to withhold the permit." He admitted that he was influenced by the facts that the plan of the building was susceptible of being used as a garage and that the second applicant was the same person as the first applicant. He also admitted that he discredited Mr. Scott's good faith and his statement that he wanted it now for stores.

But in our judgment that was not sufficient to justify his refusal to grant the permit under the evidence in the record. A building erected for a church might with a few changes be converted into a garage, a theatre or something very different from what it purported to be intended for, but that can not be the test. The case of *People ex rel. C. H. Realty Co. v. Stroebel,* 209 N. Y. 434, S. C. 103 N. E. 735, is very analagous in many respects to the present one. The application in that case stated that the building was, "to be used and occupied for buying, selling, dealing in and otherwise disposing of vehicles, automobiles, motorcycles and other personal property." The ordinance of the City of Utica provided that, "No person, firm or corporation shall hereafter maintain or conduct a public garage for the storing, maintenance, keeping, caring for, or repairing of automobiles or motor vehicles within the city limits, without permission of the Superintendent of Buildings." The Superintendent of Buildings refused to issue a permit because "it manifestly appeared from an inspection of the application and plan submitted therewith that the fair intention of the plans and specifications was to erect, maintain and conduct a public garage." The Court said, "In view of the peculiar phraseology of the ordinance above quoted (No. 215, Sec. 1), and the specific ground upon which the respondent refused the

relator's application for a building permit, we have reached the conclusion that the respondent's determination and the order of the Appellate Division affirming it are not sustained by the record now before the Court." Again the Court said: "From the general description of the building, and the text of the specifications, we can do no more than to conjecture that the building may possibly be intended for use as a public garage, that is not enough." The Court reversed the order of the Appellate Division and the determination of the Superintendent of Buildings, without deciding whether the ordinance in question was a constitutional exercise of municipal authority, and added, "That question may be more fairly and fully presented in an action for an injunction if the relator does anything which may bring it within the condemnation of the ordinance." CULLEN, Chief Judge, concurred in the opinion of the Court, but was inclined to go further and hold that the respondent had no right to refuse the permit for the construction of the building, even though the owner did contemplate its use for the purpose of a public garage. It is proper to add that in that case the Court referred to the fact that the record did not satisfactorily show what evidence there was before the Superintendent of Buildings.

It was said in *Bostock* v. *Sams,* 95 Md. 400, on page 417, "If the building which the appellants propose to erect shall be put to the use it is alleged to be intended for, and a question shall then be raised as to the legality of that use, such question will then become one of interest to the community and of most serious import to those owning and making use of the property in question; but it has no place in this discussion."

As we have seen, the petitioner in this case asked for a mandamus to compel the respondent to issue a permit "to erect on said lot four stores for general business purposes, in accordance with the provisions of the plat and specifications herewith filed." The order of the lower Court directed "that the writ of mandamus be forthwith issued in manner and form as prayed in said petition," and we can not admit, as

we understood it to be suggested at the argument by counsel
for appellant, that the petitioner can obtain a permit, through
the aid of the Court, to erect a building for purposes set out
in his petition, and then after he has erected the building
make use of it for purposes such as he is not entitled to use
it for without first obtaining the approval of the Mayor—
particularly for such purposes as his petition shows he first
asked a permit for, which was refused.    That would be a
fraud on the Court which granted him the relief prayed for,
and any attempt to perpetrate it could and should promptly
be checked.    We are not now called upon to pass on the
validity of the ordinance, in so far as the particular provi-
sions applicable to garages, etc., and numbered 5, are con-
cerned, inasmuch as if the petitioner desired to attack the
ordinance he could have done so, but, practically conceding
it to be valid, abandoned further effort to get that permit and
now seeks one for another avowed purpose.    Hence we say
he would not be permitted to erect a building, under a permit
obtained by the help of the Court, for the purpose stated
in the petition, and then use it for other purposes which
were denied him.    We do not mean to say he can not use a
store to exhibit automobiles for sale, as he says his intention
is, but he can not under the permit to be granted under this
petition use it as a garage or service station, such as he first
applied for.

So we are brought back to the question whether the appel-
lant rightfully refused this permit, for the reasons he gave,
and it seems clear to us that he did not.    No authority has
been shown to authorize him or the municipality to prevent
the appellee from erecting a building on the lot to be used
for stores, and we can not admit that he could not sell auto-
mobiles in his store on said lot.    It was said in *Strobel's case,
supra,* "There is nothing in the ordinance which purports to
limit the right to erect and occupy buildings for the sale of
vehicles, automobiles and motorcycles, and, it may be said
in passing, any attempt to exercise any such power would be

unconstitutional, for the business of selling such vehicles is as lawful as the sale of groceries or dry goods." Of course, the right to regulate the use of automobiles and the storage of gasoline, &c., for such purposes in a particular locality may present a different question.

It can not be denied that less pretentious buildings than those already in a particular neighborhood may be and often are objectionable, not only to the owners of those there, but to other residents of the city, but if they comply with building regulations having reference to protection against fire and other things which can be validly regulated, we know of no way of preventing their erection, unless possibly it be under some very peculiar circumstances, different from those presented in this case. It was said in *Bostock* v. *Sams*, 95 Md., on pages 412-413: "It can not be pretended that the citizen has not the common law right to acquire title to a lot of land, qualified or absolute, in a City as elsewhere and to build upon, and improve it as his taste, his convenience or his interests may suggest, or as his means may justify, without taking into consideration whether his buildings and improvements will conform in size, 'general character and appearance' to the 'general character of the buildings previously erected in the same locality;' even though there might be those in whose 'judgment' his so building might in *some way* 'tend to depreciate the value of surrounding improved or unimproved property.' " Of course, we are aware that there were questions involved in that case which do not arise in this, but what we have just quoted is applicable here as well as there.

In *Cochran* v. *Preston,* 108 Md. 220, we affirmed an order of the lower Court dismissing an application for a writ of mandamus to require a permit to be issued to erect an additional story on the petitioner's property. We sustained the statute in question on the ground that its primary object was protection from fire, and was not passed for purely ornamental purposes. JUDGE WORTHINGTON, in delivering the opinion, quoted from *Freund on Constitutional Rights and*

*Public Policy* (1904), Sec. 181, that "If the purposes were purely aesthetic, the impairment of property rights, even upon the payment of compensation, would not pass unchallenged," and also from *Tiedeman on State and Federal Control of Persons and Property*, 755, that "Regulations which are designed only to enforce upon the people the legislative conception of artistic beauty and symmetry will not be sustained, however much such regulations may be needed for the artistic education of the people." He added, "Such is undoubtedly the weight of authority, though it may be that in the development of a higher civilization the culture and refinement of the people has reached the point where the educational value of the 'Fine Arts,' as expressed and embodied in architectural symmetry and harmony, is so well recognized as to give sanction, under some circumstances, to the exercise of this power even for such purposes." And he also quoted from *Welch* v. *Swasey,* 193 Mass. 364, that "If the primary and substantial purpose of the legislation is such as justifies the Act, consideration of taste and beauty may enter in as auxiliary."

We are not now called upon to say under what circumstances, if it be conceded that there are some, there may be a valid statute passed for the purpose of artistic beauty and symmetry alone, or purely aesthetic purposes, as it is contended by the appellant that JUDGE WORTHINGTON intimated might be done. No such statute is relied on in this case, and we are not aware of any law in force here, even if it be possible that there could be such a valid statute or ordinance which would prevent an owner of property from erecting a building in such a locality as this, simply because it would be used for stores. Opening stores in some neighborhoods may be injurious to surrounding properties occupied for residences, but it would be difficult, if not impossible, to prevent an owner from converting his residence into a store building, even in the most exclusive part of the city, if he saw proper to do so. Other considerations than whether they

can be prohibited by law generally control the owners in such matters. But it would be going very far to say that the owner of this lot could not erect stores on it, simply because there are now no stores there, and there are valuable properties of other kinds in the immediate neighborhood. Everyone familiar with the City of Baltimore, or any other large city, for some years knows how neighborhoods have changed in such respects, and, as business grows, properties formerly residences are often converted into stores and other places of business, as indeed the testimony shows in the case near this locality. If the courts had power to prevent the introduction of stores in such localities as the one now before us, the exercise of that power might result in serious injury to those having vacant lots or desiring to convert their buildings into stores, if there may shortly be a change of the use of properties in the immediate locality. It may not be out of place, under the peculiar circumstances of this case, to suggest the advisability of the appellee and the city authorities endeavoring to agree upon definite uses of this property, as it may avoid further litigation and result in some protection to the neighborhood which the appellant thinks should be given it, but which the Court is of the opinion can not be given in this case.

Being of the opinion that the appellee was entitled to the permit, the order of the lower Court must be affirmed.

*Order affirmed, the appellant to pay the costs.*