## STATE EX REL. SAMUEL LACHTMAN v. JAMES G. HOUGHTON.[1]

July 28, 1916.

Nos. 19,773—(163).

**Constitution — invalidity of municipal ordinance.**

1. Although an ordinance adopted under legislative authority is presumed to be valid, it must nevertheless be declared invalid if it clearly impairs rights guaranteed by the Constitution.

**Constitution — restricting use of private property.**

2. The use which the owner may make of his property is subject to any reasonable restrictions and regulations, imposed by the legislative power, which tend to promote the public welfare or to secure to others the rightful use and enjoyment of their own property; but only such use of property as may produce injurious consequences, or infringe the lawful rights of others, can be prohibited without violating the constitutional provisions that the owner shall not be deprived of his property without due process of law nor without compensation first paid or secured.

[1] Reported in 158 N. W. 1017.

**Same — erection of store building in residence district.**

>  3. Prohibiting the owner from erecting a store building upon land within a residential district cannot be sustained as a legitimate exercise of the police power and is an unlawful invasion of the rights secured to him by the Constitution.

Upon the relation of Samuel Lachtman the district court for Hennepin county granted its alternative writ of *mandamus* directing James G. Houghton, as inspector of buildings for the city of Minneapolis, to issue to the relator a permit for the electrical wiring of a certain building described in the writ or show cause why he had not done so. The answer of respondent set up the ordinance of the city council regulating the construction of buildings within that city and an ordinance amending the former ordinance passed on August 20, 1915, designating certain districts as industrial districts and designating certain other districts as residential districts. The matter was heard before Fish, J., who made findings and quashed the writ. From the judgment entered pursuant to the order for judgment, relator appealed. Reversed.

*George B. Leonard* and *M. Rose,* for appellant.
*C. D. Gould* and *R. S. Wiggin,* for respondent.


TAYLOR, C.

The relator owns two lots on Fourteenth avenue south in the city of Minneapolis, and, on August 12, 1915, procured from the building inspector of that city a permit for the erection of a small one story store building thereon. Immediately thereafter, he contracted with the Hennepin Lumber Company to erect the building, and also executed to Aaron Rudoy a lease of the building so to be erected for a term of two years for use as a store. Pursuant to the contract and before August 20, 1915, the contractor began excavating for the building and delivered some materials therefor upon the premises. On August 20, 1915, the city council passed an ordinance establishing a residential district which provided that "no person shall hereafter erect within said district any building except those used for residence purposes, including duplex and double houses, flats, tenement and apartment houses, and there are hereby prohibited within said district the erection and maintenance of hotels, stores, fac-

tories, warehouses, dry cleaning plants, public garages or stables, or any industrial establishment or any business whatsoever."

The relator's property was within the residential district so established, and, at the same meeting at which the ordinance was adopted, the city council, by motion, directed the building inspector to revoke the permit issued to him for the erection of the store building. It does not appear that the building inspector took any action toward revoking the permit, and the relator completed the building ready for the installation of wires and other appliances for lighting it by electricity. The ordinances of the city prohibit the installation of such appliances without a permit therefor from the building inspector, and relator applied to him for such permit. He refused to issue it upon the sole ground that the erection and maintenance of a store building was prohibited by the ordinance above quoted. Thereupon relator sought to compel the issuance of the permit by *mandamus*. The district court rendered judgment against him and he appealed.

Relator contends that the ordinance infringes the provision of the state Constitution prohibiting the taking or damaging of private property for public use without compensation; and the provision of the United States Constitution prohibiting the state from depriving any person of his property without due process of law; also that when he obtained his permit and began construction thereunder he acquired a vested right to erect and maintain his building which could not be impaired by an ordinance adopted thereafter. Respondent contends that the ordinance was enacted under the police power of the state and is a proper exercise of that power.

The city had legislative authority for adopting the ordinance (G. S. 1913, §§ 1581-1585); and the question presented is whether it violates rights secured to property owners by the Constitution, or whether it can be sustained as a legitimate exercise of the police power. It is presumed to be valid and will not be declared invalid unless it clearly transgresses some constitutional inhibition. The legislature has power to regulate and restrict the manner in which the owner may make use of his property so far as may be necessary for the general welfare; but such regulations and restrictions must tend in some degree to prevent harm to the public or to promote the common good, and must not unreasonably

impair or abridge his property rights. In State v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, in which the validity of the statute regulating the business of persons selling agricultural products on commission was upheld, it is said:

"The term 'police power,' as understood in American constitutional law, means simply the power to impose such restrictions upon private rights as are practically necessary for the general welfare of all. Rippe v. Becker, 56 Minn. 100, 57 N. W. 331 [22 L.R.A. 857]. And it must be confined to such restrictions and burdens as are thus necessary to promote the public welfare, or, in other words, to prevent the infliction of public injury. State v. Chicago, M. & St. P. Ry. Co. 68 Minn. 381, 71 N. W. 400 [38 L.R.A. 672, 64 Am. St. 482]. And in the exercise of its police powers a state is not confined to matters relating strictly to the public health, morals, and peace, but, as has been said, there may be interference whenever the public interests demand it; and in this particular a large discretion is necessarily vested in the legislature, to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499 [38 L. ed. 385]. If, then, any business becomes of such a character as to be sufficiently affected with public interest, there may be a legislative interference and regulation of it in order to secure the general comfort, health and prosperity of the state, provided the measures adopted do not conflict with constitutional provisions, and have some relation to, and some tendency to accomplish, the desired end. The subjects which may be legislated upon are, of necessity, continually arising as business increases, and new phases, conditions, and methods appear. The development of the law relating to the proper exercise of the police power of the state clearly demonstrates that it is very broad and comprehensive, and is exercised to promote the general welfare of the state, as well as its health and comfort."

It is well settled that under this power cities may regulate and control the construction of buildings in the interest of health and safety and for the purpose of guarding against fires, and to accomplish this end may prohibit the erection of any building without first obtaining a permit therefor. To promote the general well-being, cities may also prescribe districts within which no business or occupation of a noxious

or offensive character, or which tends to interfere with the comfort and prosperity of others, may be carried on. The dividing line between restrictions which may be lawfully imposed under the police power and those which invade the rights secured to the property owner by the constitutional provisions that his property shall not be taken or damaged without compensation, nor he be deprived of it without due process of law, has never been distinctly marked out, and probably cannot be. As different cases arise, the courts determine from the facts and circumstances of the particular case whether it falls upon one side or the other of the line. The rule governing the exercise of the police power and defining the duty of the courts in respect thereto is stated in general terms in State v. Chicago, M. & St. P. Ry. Co. 68 Minn. 381, 71 N. W. 400, 38 L.R.A. 672, 64 Am. St. 482, as follows:

"While the police power of the state is a very extensive one, it is not without limits. A law enacted in the exercise of the police power must be a police regulation in fact. If it will not conduce to any legitimate police purpose, or if it amounts to an arbitrary and unwarranted interference with the right of the citizen to pursue any lawful business, the courts have a right, and it is their duty, to declare the law unconstitutional."

Of the cases cited by the city as supporting its contention that the erection of store buildings in residential districts may be prohibited under the police power, the following are the most nearly in point: In re Montgomery, 163 Cal. 457, 125 Pac. 1070, Ann. Cas. 1914A, 130. Montgomery had been convicted of maintaining a lumber yard in a residence district of the city of Los Angeles in violation of an ordinance which enumerated several industrial districts, declared the remainder of the city to be a residence district, and prohibited establishing or maintaining within the residence district, "any stone-crusher, rolling-mill, machine-shop, planing-mill, carpet-beating establishment, hay-barn, wood yard, lumber yard, public laundry or wash-house." The court did not discuss the constitutional question further than to say that the ordinance had been held constitutional in Ex Parte Quong Wo, 161 Cal. 220, 118 Pac. 714, and that what was there said applied with equal force to this case. Turning to the case cited we find an extended discussion of the question and of the cases in that state and elsewhere bearing

thereon; and that the decision was placed upon the ground that the occupations enumerated in the ordinance were proper matters for police regulation in the interest of the health, safety and comfort of the people of the city. The court said:

"The design of the ordinance here involved undoubtedly was to protect such portions of the city of Los Angeles as are devoted principally to residence purposes from the dangers and discomfort attendant upon the operation of certain kinds of business which, while not necessarily nuisances *per se,* have always been recognized as proper subjects for police regulation. We do not feel warranted in saying that as to public laundries and washhouses, the conclusion of the city council was clearly unreasonable."

People v. Village of Oak Park, 266 Ill. 365, 107 N. E. 636, involved an ordinance prohibiting the erection or maintenance of a public automobile garage within certain districts. The court considered the rule which applied to livery stables and similar kinds of business applicable, and held the ordinance constitutional, saying "that while a garage is not a nuisance *per se,* it is of such character that it becomes a nuisance when conducted in particular localities and under certain conditions, and that it was lawful for the legislature to confer authority upon cities to direct its location." In People v. City of Chicago, 261 Ill. 16, 103 N. E. 609, 49 L.R.A. (N. S.) 438, Ann. Cas. 1915A, 292 (not cited), the same court had under consideration an ordinance of the city of Chicago prohibiting the erection of a retail store in any block in which all the buildings were used exclusively for residence purposes, and said:

"An act of the legislature which deprives the citizen of his liberty or property right cannot be sustained under the police power unless the public health, comfort, safety or welfare demands such enactment (Ruhstrat v. People, 185 Ill. 133, 57 N. E. 41; Bailey v. People, 190 Ill. 28, 60 N. E. 98, 54 L.R.A. 838, 83 Am. St. 116; Bessette v. People, 193 Ill. 334, 62 N. E. 215, 56 L.R.A. 558), and there must be some logical connection between the object to be accomplished by such legislation and the means prescribed to accomplish that end. The owner of property has the constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health **and** comfort or general welfare of the public. This right cannot be wholly taken away

or limited by the State except in so far as it may become necessary for individual rights to yield to the higher and greater law of the best interest of the public. Haller Sign Works v. Training School, 249 Ill. 436 [94 N. E. 920, 34 L.R.A.(N.S.) 998].

"There is nothing inherently dangerous to the health or safety of the public in conducting a retail store. It may be that in certain exclusively residential districts the owners of residence property would prefer not to have any retail stores in such blocks, but if such be the case, it manifestly arises solely from æsthetic considerations, disconnected entirely from any relation to the public health, morals, comfort or general welfare. Legislation, either by the state or by municipal corporations, which interferes with private property rights or personal liberty, cannot be sustained for purely æsthetic purposes," The court ordered the issuance of a permit for the erection of the store building.

State v. Withnell, 91 Neb. 101, 135 N. W. 376, 40 L.R.A.(N.S.) 898, involved an ordinance of the city of Omaha forbidding the construction of a brick kiln within the city. The court pointed out that a brick kiln could become so offensive as to be a nuisance, and said:

"When the entire record is considered, the evidence does not justify a finding that the ordinance in question has no relation to the public health, safety or welfare, or that it is not a *bona fide* exercise of police power or that it amounts to an unconstitutional invasion of relator's individual rights."

The city also cites a number of cases which involved regulations as to saloons, slaughter houses, livery stables, fire limits, the height of buildings, etc., and which define the extent of the police power in broad general terms and announce the well-settled rule that statutes and ordinances are presumed to be valid; but cites no case, and we have found none, holding that the legislature, in the exercise of the police power, may prohibit the erection of an ordinary store building in a residential district. This precise question has seldom arisen, but cases similar in principle are numerous.

In the so-called billboard cases, it has uniformly been held that statutes or ordinances prohibiting the owner from erecting upon his property billboards or other structures for advertising purposes cannot be sustained under the police power, and are void as an unwarranted invasion of pro-

perty rights. Haller Sign Works v. Training School, 249 Ill. 436, 94 N. E. 920, 34 L.R.A. (N.S.) 998; City of Passaic v. Paterson Bill Posting, Advertising & Sign Painting Co. 72 N. J. Law, 285, 62 Atl. 267, 111 Am. St. 676, 5 Ann. Cas. 995; Varney & Green v. Williams, 155 Cal. 318, 100 Pac. 867, 21 L.R.A. (N.S.) 741; People v. Murphy, 195 N. Y. 126, 88 N. E. 17; Crawford v. City of Topeka, 51 Kan. 756, 33 Pac. 476, 20 L.R.A. 692, 37 Am. St. 323; State v. Whitlock, 149 N. C. 542, 63 S. E. 123, 128 Am. St. 670, 16 Ann Cas. 765; Bryan v. City of Chester, 212 Pa. St. 259, 61 Atl. 894, 108 Am. St. 870; Commonwealth v. Boston Advertising Co. 188 Mass. 348, 74 N. E. 601, 69 L.R.A. 817, 108 Am. St. 494; Curran Bill Posting Co. v. City of Denver, 47 Colo. 221, 107 Pac. 261, 27 L.R.A (N.S.) 544.

The cases are equally unanimous that restrictions upon the use of property cannot be imposed under the police power for purely aesthetic considerations. Haller Sign Works v. Training School, 249 Ill. 436, 94 N. E. 920, and note appended to report of that case in 34 L.R.A. (N.S.) 998.

In City of St. Louis v. Hill, 116 Mo. 527, 22 S. W. 861, 21 L.R.A. 226, the city required all buildings fronting upon a boulevard therein to be set back 40 feet from the street line. The law authorizing the ordinance was held void as taking private property without due process of law and without compensation.

In City of St. Louis v. Dorr, 145 Mo. 466, 41 S. W. 1094, 46 S. W. 976, 42 L.R.A. 686, 68 Am. St. 575, defendants were prosecuted for carrying on a confectionery business in violation of an ordinance of the city of St. Louis which provided that the houses fronting on Washington boulevard "shall be used as residences only, and no business avocations whatever shall be allowed to be followed in same." The ordinance was held void on two grounds—that it was an unwarranted invasion of private property rights, and that the legislative act authorizing it was an attempt to amend the charter of the city in a manner forbidden by the Constitution.

In Willison v. Cooke, 54 Colo. 320, 130 Pac. 828, 44 L.R.A. (N.S.) 1030, an ordinance of the city of Denver prohibited the erection of store buildings, factories, hotels, etc., in any block within a designated district without the written consent of a majority of the owners of the

property in the block fronting on the same street, and provided that whenever 50 per cent of such lots were improved all buildings thereafter erected should be set back from the street line the average distance of the buildings already built. Plaintiff brought *mandamus* to compel the issuance of a permit for the erection of a store building within the forbidden territory. The court said:

"A store building is in no sense a menace to the health, comfort, safety, or general welfare of the public. * * * These regulations do not, in the slightest degree, have any relation whatever to the health, safety or general welfare of the public, nor do they tend, in any sense, to accomplish anything for the benefit of the public in this respect, but merely attempt to limit the petitioner in a use of his property, which does not infringe upon the rights of others. This deprives him of the fundamental right to erect a store building upon his lots covering such portions thereof as he chooses, although, by so doing, he does not imperil or threaten injury to others of which they can lawfully complain. A store building in a residence section of the city is not desirable, from an æsthetic point of view; but restrictions for this purpose alone cannot be upheld, as it is only those having for their object the safety and welfare of the public which justifies restricting a use of the property by the owner. Curran Co. v. Denver, [47 Colo. 221, 107 Pac. 261, 27 L.R.A.(N.S.) 544]; State v. Whitlock [149 N. C. 543, 63 S. E. 123, 128 Am. St. 670, 16 Ann. Cas. 765]; Varney v. Williams, [155 Cal. 318], 100 Pac. 867, [21 L.R.A.(N.S.) 741, 132 Am. St. 88]; City of Passaic v. Paterson Bill Posting A. S. & P. Co. [72 N. J. Law, 285], 62 Atl. 267 [111 Am. St. 676, 5 Ann. Cas. 995]; Commonwealth v. Boston Adv. Co. [188 Mass. 348, 74 N. E. 601, 69 L.R.A. 817, 108 Am. St. 494].

"We must, therefore, hold that the restrictions under consideration are invalid, because they have no relation to any object which the municipality, in the exercise of its police power, may legally accomplish, and are unreasonable, arbitrary and oppressive. * * * Enforcing the provisions of the ordinances in question does not deprive the petitioner of title to his lots. He would not be ousted of possession. He would still have the power to dispose of them; but, although there would be no actual or physical invasion of his possession, he would be deprived of the right to put them to a legitimate use, which does not injure the public,

and this, without compensation or any provision therefor. This would clearly deprive him of his property without compensation, and without due process of law, which our Federal and state Constitutions not only inhibit, but which would be repugnant to justice, independent of constitutional provisions on the subject."

In Bostock v. Sams, 95 Md. 400, 52 Atl. 665, 59 L.R.A. 282, 93 Am. St. 394, involving an ordinance of the city of Baltimore which prohibited the issuance of a building permit unless the building to be erected "will conform to the general character of the buildings previously erected in the same locality, and will not in any way tend to depreciate the value of the surrounding improved or unimproved property," the court said [95 Md. 412]:

"Now undoubtedly the proviso in the ordinance here under consideration attempts to confer powers that affect the citizen in his right of property and his common-law right. It cannot be pretended that the citizen has not the common-law right to acquire title to a lot of land, qualified or absolute, in a city as elsewhere and to build upon, and improve it as his taste, his convenience or his interest may suggest or as his means may justify without taking into consideration whether his buildings and improvements will conform in 'size, general character and appearance' to the 'general character of the buildings previously erected in the same locality;' even though there might be those in whose 'judgment' his so building might in *some way* 'tend to depreciate the value of surrounding improved or unimproved property.'"

In Stubbs v. Scott, 127 Md. 86, 95 Atl. 1060, the court said:

"Opening stores in some neighborhoods may be injurious to surrounding properties occupied for residences, but it would be difficult, if not impossible, to prevent an owner from converting his residence into a store building, even in the most exclusive part of the city, if he saw proper to do so. Other considerations than whether they can be prohibited by law generally control the owners in such matters. But it would be going very far to say that the owner of this lot could not erect stores on it, simply because there are now no stores there, and there are valuable properties of other kinds in the immediate neighborhood Everyone familiar with the city of Baltimore, or any other large city, for some years, knows how neighborhoods have changed in such respects, and as busi-

ness grows, properties formerly residences are often converted into stores and other places of business, as indeed the testimony shows in the case near this locality. If the courts had power to prevent the introduction of stores in such localities as the one now before us, the exercise of that power might result in serious injury to those having vacant lots or desiring to convert their buildings into stores, if there may shortly be a change of the use of properties in the immediate locality."

In People v. Stroebel, 209 N. Y. 434, 103 N. E. 735, the city of Utica refused to issue a permit for a building for the business of dealing in vehicles, automobiles, motor cycles, etc., and justified under an ordinance forbidding the maintenance of a public garage. The court said:

"There is nothing in the ordinance which purports to limit the right to erect and occupy buildings for the sale of vehicles, automobiles and motor cycles, and it may be said in passing, any attempt to exercise any such power would be unconstitutional, for the business of selling such vehicles is as lawful as the sale of groceries or dry goods."

In Quintini v. Board of Aldermen, 64 Miss. 483, 1 South. 625, 60 Am. Rep. 62, a shell boulevard lined with summer homes extended along the shore in the city of Bay St. Louis. Under express authority in its charter, the city had prohibited the erection of any buildings except open summer houses between the boulevard and the bay. Plaintiff brought the action to enjoin the city from preventing her from erecting a market within the forbidden ground. The court said:

"The law can know no distinction between citizens because of the superior cultivation of the one over the other. It is with common humanity that legislatures and courts must deal, and that use of property which in all common sense and reason is not a nuisance to the average man cannot be prohibited because repugnant to some sentiment of a particular class. That the legislature in the exercise of the police power may prohibit in particular localities such use of property as is injurious to public health is admitted, and what it may do may also be authorized to be done by the local authorities, but it does not follow that it may by a mere declaration convert the harmless, proper and ordinary use of property into a nuisance. * * * The effect of the ordinance is to deprive

tl.  ‑‑‑‑ners of property of its lawful use for a supposed public advantage, and before this can be done there must be just compensation first made."

See also City of Philadelphia v. Linnard, 97 Pa. St. 242; Re Chestnut Street, 118 Pa. St. 593; City of Passaic v. Paterson B. P. A. S. & P. Co. 72 N. J. Law, 285, 62 Atl. 267, 111 Am. St. 676, 5 Ann. Cas. 995.

The police power of the state is very broad, but not without limits. Under it the legislative power may impose any reasonable restrictions and may make any reasonable regulations, in respect to the use which the owner may make of his property, which tend to promote the general well-being or to secure to others that use and enjoyment of their own property to which they are lawfully entitled; but when the legislative power attempts to forbid the owner from making a use of his property which is not harmful to the public and does not interfere with the rightful use and enjoyment of their own property by others, it invades property rights secured to the owner by both the state and Federal Constitutions.   Only such use of property as may produce injurious consequences, or infringe the lawful rights of others, can be prohibited without violating the constitutional provisions that the owner shall not be deprived of his property without due process of law nor without compensation therefor first paid or secured.   That the right of a property owner to erect a store building upon his land is within the protection of these constitutional provisions, and cannot be taken away under the guise of a police regulation, is so universally recognized that an extended search has failed to disclose any decision holding otherwise either in fact or in principle.   We are forced to the conclusion that the ordinance in question cannot be sustained insofar as it prohibits the erection of ordinary store buildings.   This does not mean however that it is not valid insofar as it applies to structures or occupations which are within the regulatory domain of the police power.

The validity of chapter 128, p. 180, of the Laws of 1915 which provides for establishing residential districts and for making compensation to property owners damaged thereby is not involved in this case and has not been considered or determined herein.

Judgment reversed.

HALLAM, J. (dissenting).

I dissent.

I will not concern myself with the question whether a building permit once issued can be revoked, or whether under the facts in this case plaintiff acquired any vested rights by reason of the action or nonaction of city officials.

I address myself to the main question, whether the state has the constitutional power to regulate the location of grocery stores in a large city. We need not look in the Constitution to find t¹ power. The power exists unless it has been taken away. The contention is that such regulation violates the portion of the Fourteenth amendment to the Federal Constitution, which prohibits the state from depriving any person of his property without due process of law. It may be conceded that the constitutional provision above cited not only prohibits the taking away from a man the title to his property, without compensation; it prohibits the depriving him of the use of his property as well.

I enter upon the discussion of the question realizing that some of the views which I entertain are opposed to the greater number of decisions. This is always a consideration of importance, for decisions of courts are · usually arrived at with thoughtful care, yet we should not overlook the fact that precedent is sometimes followed with too much obedience. It should be said, however, that there are some well considered decisions in harmony with the views here expressed, and also that the preponderance of authority the other way is not so great as would at first appear from the cases cited. Many of these cases involve only common law rights and the right of the court to impose restrictions; others involve only the construction of statutes or charter provisions and decide no constitutional question at all.

We must take judicial notice of some of the things which everybody knows. In every city and every hamlet there are business districts and residence districts more or less distinct. They are located by certain logical laws of trade and conduct. The business district is central; the residence district, suburban. As the city grows the central business district becomes inadequate for all the city's business needs. Accordingly, local business districts spring up, and they too are in a general way separated from the residence districts. Usually these follow lines of

traction. No government has planned this separation. Without any definite plan, the intuitive efforts of the mass of people of every community has been devoted more or less consciously to maintain this separation. The fact is that people generally recognize that a business district is not the best place for a family home. The man of thrift, whether of large means or small, looks forward to a home out from the center of business activities, where he may live upon a plot of ground more or less ample in space, suitable for the bringing up of a family. The consideration is partly æsthetic, but it is in far greater measure purely practical. The prompting motives are, better light and air, better moral surroundings, and better conditions for recreation. The result is that districts spring up devoted exclusively to the building of homes.

We are not concerned with the question whether such homes are large or small. When a city block has been devoted to the building of homes, with the incidental breathing spaces about them, the property in the district acquires a value by reason of that exclusive use. The effect of the erection of a business structure in a residence block is well known. To an extent it changes the character of the locality from residence to business. It is a matter of common knowledge that the erection of a single grocery store, with its characteristic architecture and mode of construction and operation in a block theretofore devoted exclusively to homes, annihilates the value of residences round about. The reasons for this depreciation in value are the same as those which in the first instance prompted home owners to locate their homes away from the center of trade.

It is said this relator has a vested right guaranteed him by the Constitution to damage his neighbors' homes by devoting his lot to a use incongruous with the use of property in the vicinity, and that no power can stop him, for to stop this damage would be to take his property without due process of law. If it be said that the owner of a lot in a district of homes has the vested right to use it as he sees fit, notwithstanding the damage to his neighbor, then what of the right of his neighbor whose property value he destroys. Has the one a vested right to destroy and the other no right at all to be protected? In my judgment this slaughter of property value is something the legislature has power to prevent. Courts have exercised the power to abate what they have de-

nominated nuisances at common law. This grocery store was not a nuisance at common law. But it does not follow that the legislature may not regulate the location of business structures that were not nuisances at common law. It may do so. "There are many things that a man might do at common law that the states may forbid. He might embezzle until a statute cut down his liberty." Holmes, J., in Noble State Bank v. Haskell, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. ed. 112, 32 L.R.A. (N.S.) 1062, Ann. Cas. 1912A, 487.

In my opinion the foregoing facts furnish a justification for restriction by the state of business structures in a residence district. The Fourteenth amendment has not abrogated the police power of the state. What may be done by the state under the exercise of that power without conflict with the Fourteenth amendment is a Federal question, upon which the Federal Supreme Court has often spoken.

It is said the police power is "one of the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." District of Columbia v. Brooke, 214 U. S. 138, 149, 39 Sup. Ct. 560, 563, 53 L. ed. 941.

It is held that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity as well as those to promote public health, morals or safety; it is not confined to the suppression of what is offensive, disorderly or unsanitary, but extends to what is for the greatest welfare of the state. Bacon v. Walker, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. ed. 499; Chicago, B. & Q. Ry. Co. v. State, 200 U. S. 561, 592, 26 Sup. Ct. 341, 50 L. ed. 596.

It is said that "in a general way * * * the police power extends to all the great public needs. * * * It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." Noble State Bank v. Haskell, 219 U. S. 104, 111, 31 Sup. Ct. 186, 188, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487.

The police power, it is said, "does not confer power upon the whole people to control rights which are purely and exclusively private * * * but it does authorize the establishment of laws requiring each citizen to so conduct himself, and so use his own property, as not unnecessarily to

injure another. * * * Under these powers the government regulates the conduct of its citizens one towards another, and the manner in which each shall use his own property, when such regulation becomes necessary for the public good." Munn v. Illinois, 94 U. S. 113, 124, 125, 24 L. ed. 77.

In Gundling v. Chicago, 177 U. S. 183, 188, 20 Sup. Ct. 633, 635, 44 L. ed. 725, it was said: "Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be and to what particular trade, business or occupation they shall apply, are questions for the state to determine, and their determination comes within the proper exercise of the police power by the state, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend beyond the power of the state to pass, and they form no subject for Federal interference."

The power is not confined to regulations of business which is a nuisance *per se,* "and so long as the regulation in question is not shown to be clearly unreasonable and arbitrary, and operates uniformly upon all persons similarly situated in the particular district, the district itself not appearing to have been arbitrarily selected, it cannot be judicially declared that there is a deprivation of property without due process of law, or a denial of the equal protection of the laws, within the meaning of the Fourteenth amendment." Reinman v. City of Little Rock, 237 U. S. 171, 177, 35 Sup. Ct. 511, 513, 59 L. ed. 900.

Such laws are not, it is said, "obnoxious to constitutional provisions * * * merely because they do not provide compensation to the individual whose liberty is restrained. He is presumed to be rewarded by the common benefits secured." Watertown v. Mayo, 109 Mass. 315, 318, 12 Am. Rep. 694.

These principles would seem to cover this case. They have been applied to similar cases.

In Garrett v. Janes, 65 Md. 260, 267, 3 Atl. 597, 600, the court said: "We see no difficulty in the standing together of a special ordinance adapted to a particular locality, such as Mount Vernon Place, and a general one

applicable to the streets and alleys of the city at large. The need of such discrimination is apparent. * * * In a city noted for its monuments, municipal legislation peculiar to their neighborhood would seem indispensable; and we regard the ordinance allowing steps, porticos, or any other ornamental structure to extend nine feet into Mount Vernon Place a valid and reasonable exercise of statutory power."

The foregoing case is cited in Cochran v. Preston, 108 Md. 220, 229, 70 Atl. 113, 23 L.R.A.(N.S.) 1163, 129 Am. St. 432, 15 Ann. Cas. 1048, but that case was decided on other grounds. Bostock v. Sams, 95 Md. 400, 52 Atl. 665, 59 L.R.A. 282, 93 Am. St. 394, does not overrule it. That case involved only the common-law right of landholders. Nor does Stubbs v. Scott, 127 Md. 86, 95 Atl. 1060. That case involved the power of a city to make restrictions without statutory authority. State v. Gurry, 121 Md. 534, 88 Atl. 546, 47 L.R.A.(N.S.) 1087, Ann. Cas. 1915B, 957, sustaining a law limiting the use of property along race lines, goes far toward sustaining restrictive statutes.

The California court has sustained legislation prohibiting the location in residence districts of a laundry, Ex Parte Quong Wo, 161 Cal. 220, 118 Pac. 714; a lumber yard, In re Montgomery, 163 Cal. 457, 125 Pac. 1070, Ann. Cas. 1914A, 130; and a brick yard, Ex Parte Hadacheck, 165 Cal. 416, 132 Pac. 584, L.R.A. 1916B, 1248. The last decision was affirmed in the United States Supreme Court, 239 U. S. 394, 36 Sup. Ct. 143, 60 L. ed. 348. In this case, while there were charges made that the business was a menace to health, the court did not so find, but the basis of the decision is that the surrounding region had become a residence section and that the occupants of the neighboring dwellings are seriously discommoded by the operation of the business, and that the continuance of the business in its present location was so detrimental to the interests of others as to require suppression.

In Eubank v. City of Richmond, 110 Va. 749, 67 S. E. 376, 49 Ann. Cas. 186, the court sustained as a proper exercise of the police power an ordinance which required the committee on streets to establish a building line on a street on request of two-thirds of the property owners. This decision was reversed in 226 U. S. 137, 33 Sup. Ct. 76, 42 L.R.A.(N.S.)

1123, 57 L. ed. 156, Ann. Cas. 1914B, 192, but solely on the ground that the ordinance gave to the owners of other property the arbitrary right to control the property of the plaintiff in error.

In Rideout v. Knox, 148 Mass. 368, 19 N. E. 390, 2 L.R.A. 81, 12 Am. St. 560, the court sustained a law proscribing the proverbial "spite fence," and this was cited with approval by the United States Supreme Court in Camfield v. United States, 167 U. S. 518, 523, 17 Sup. Ct. 864, 42 L. ed. 260.

In Attorney General v. Williams, 174 Mass. 476, 55 N. E. 77, 47 L.R.A. 314, the court said of a law providing for regulation of the character of buildings about Copley Square, that it might have been sustained under the police power, but it in fact made provision for condemnation.

In Welch v. Swasey, 193 Mass. 364, 79 N. E. 745, 118 Am. St. 523, 23 L.R.A.(N.S.) 1160, the court sustained a law limiting the height of buildings in residence districts in Boston. The reason assigned was that the law involved elements of safety, but the following language is significant: "The value of land and the demand for space, in those parts of Boston where the greater part of the buildings are used for purposes of business or commerce, is such as to call for buildings of greater height than are needed in those parts of the city where the greater part of the buildings are used for residential purposes. It was, therefore, reasonable to provide in the statute that buildings might be erected to a greater height in the former parts of the city than in the latter, even if some of the streets in the former are narrower than those in the latter." This decision was affirmed in 214 U. S. 91, 29 Sup. Ct. 567, 53 L. ed. 923.

In State v. Withnell, 91 Neb. 101, 135 N. W. 376, 40 L.R.A.(N.S.) 898, an ordinance of the city of Omaha prohibiting the construction of a brick kiln within the city was sustained.

A word as to the *contra* decisions. There has not been entire uniformity among decisions which construe strictly the power of a state to make restrictions upon structures upon land. Some would hold restrictions upon automobile garages valid. People v. Ericsson, 263 Ill. 368, 105 N. E. 315, L.R.A. 1915D, 607, Ann. Cas. 1915C, 183; People v. Village of Oak Park, 266 Ill. 365, 107 N. E. 636. Others would hold such restrictions void. People v. Stroebel, 209 N. Y. 434, 103 N. E. 735.

Cases involving the validity of statutes or ordinances forbidding the

erection of billboards are numerous. Quite uniformly they have held such legislation invalid. In some cases of ordinances the fact that there existed no statutory authority was a potent consideration. Curran Bill Posting v. City of Denver, 47 Colo. 221, 107 Pac. 261, 27 L.R.A.(N.S.) 544; Crawford v. City of Topeka, 51 Kan. 756, 33 Pac. 476, 20 L.R.A. 692, 37 Am. St. 323. In most of them the controlling consideration was that the purpose of the prohibition was purely aesthetic, and that such considerations cannot sustain a restrictive. law. Haller Sign Works v. Training School, 249 Ill. 436, 94 N. E. 920, 34 L.R.A.(N.S.) 998; City of Passaic v. Paterson Bill Posting A. & S. P. Co. 72 N. J. Law, 285, 62 Atl. 267, 111 Am. St. 676, 5 Ann. Cas. 995; People v. Murphy, 195 N. Y. 126, 88 N. E. 17, 21 L.R.A.(N.S.) 735; State v. Whitlock, 149 N. C. 542, 63 S. E. 123, 128 Am. St. 670, 16 Ann. Cas. 765. I do not think these cases controlling. The California court, though in line with the weight of authority, in declaring legislation of this sort void, Varney & Green v. Williams, 155 Cal. 318, 109 Pac. 867, 21 L.R.A.(N.S.) 741, 132 Am. St. 88, found no trouble in sustaining the restrictions as to business structures above referred to.

In People v. City of Chicago, 261 Ill. 16, 103 N. E. 609, 49 L.R.A. (N.S.) 438, Ann. Cas. 1915A, 292, and Willison v. Cooke, 54 Colo. 320, 130 Pac. 828, 44 L.R.A.(N.S.) 1030, ordinances forbidding stores in certain districts were held void, but there was no statutory authority for the ordinances in either of these cases.

In State v. Withnell, 78 Neb. 33, 110 N. W. 680, 8 L.R.A.(N.S.) 978, 126 Am. St. 586, an ordinance making it unlawful to build except upon a certain line was held void, but there also was the element of control by neighboring property owners as in the case of Eubank v. City of Richmond, supra.

In Quintini v. Board of Aldermen, 64 Miss. 483, 1 South. 625, 60 Am. Rep. 62, the question was as to the validity of a statute making it unlawful to build on the beach side of a shell road any shanty or other building when the same has a tendency to obstruct the view or the sea breeze, and it was held void. The prohibition was against any building whatsoever.

As to decisions holding void legislative acts, or ordinances authorized by legislative acts, which restrict the construction of business structures in

residence districts, or the line on which buildings may be built, I have found only the following: St. Louis v. Dorr, 145 Mo. 466, 41 S. W. 1094, 46 S.W. 976, 42 L.R.A. 686, 68 Am. St. 575, relating to location of such buildings; and City of St. Louis v. Hill, 116 Mo. 527, 22 S. W. 861, 21 L.R.A. 226; People v. Calder, 89 App. Div. 503, 85 N. Y. Supp. 1015; Fruth v. Board, 75 W. Va. 456, 84 S. E. 105, L.R.A. 1915A, 981, involving legislation as to building line.

My opinion is that the statute in question, at least as applied to stores, was a valid exercise of legislative power.

Justice Holt concurs in the foregoing dissent.