THE HALLER SIGN WORKS, Defendant in Error, *vs.* THE
PHYSICAL CULTURE TRAINING SCHOOL, Plaintiff in
Error.

*Opinion filed April 19, 1911.*

1. CONSTITUTIONAL LAW—*individual rights are subordinate to
higher rights of public.* The natural right of every citizen to use
his property according to his own will is necessarily subject to the
limitation that in such use others shall not be injured, and all uses
of property which are injurious to the public health, comfort,
safety and welfare of society may be prohibited under the sover-
eign power of the State.

2. SAME—*power of the legislature to deprive persons of natural
rights is not unlimited.* An owner of property has the right to
make any use of it he desires that does not endanger or threaten
the safety, health, comfort or general welfare of the public, and
there are limits, therefore, beyond which the legislature cannot
constitutionally go in depriving individuals of their natural rights.

3. SAME—*constitution is the highest written law of the State.*
The courts are bound to obey both the constitution and the stat-
utes, but in every case of a conflict between the two the constitu-
tion, being the highest written law of the State, must prevail.

4. SAME—*it is for the courts to say whether the legislature has
gone beyond constitutional limits.* Where a statute, passed as an
attempted exercise of the police power of the State, is attacked
as being an unreasonable invasion of private rights, it is for the
courts to determine whether the legislature, in the particular case,
has gone beyond the constitutional limits in that respect.

5. SAME—*police power does not justify interference with pri-
vate rights for æsthetic purposes.* The police power of the State
does not justify interference by the legislature with private rights
for purely æsthetic purposes, unconnected with the safety, health,
morals or general welfare of the public.

6. SAME—*general welfare is not promoted by interfering with
private rights for æsthetic purposes.* While the general welfare is
recognized as one of the considerations which will authorize the
exercise of the police power, yet the general welfare of the State
is promoted by according to each individual the largest degree of
liberty that is consistent with the best interest of the public, and
it cannot be said that interference with private rights for purely
æsthetic purposes will promote the general welfare.

7. SAME—*the "Bill-board" act of 1909 is unconstitutional.* The
act of 1909, (Laws of 1909, p. 290,) prohibiting the erection of

structures for advertising purposes near parks and boulevards, is not limited to the regulation of matters tending to endanger or threaten the public safety, health, morals or welfare, but is an arbitrary interference with private rights for purely æsthetic purposes, and is unconstitutional.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding.

DARROW, MASTERS & BAILY, for plaintiff in error.

RYAN & CONDON, (IRVIN I. LIVINGSTON, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

This suit was brought in the municipal court of Chicago by the Haller Sign Works against the Physical Culture Training School upon a claim of $450 for erecting, installing and equipping an electric sign on a building known as 4200 Grand boulevard, in the city of Chicago. The case was tried in the court below upon an agreed state of facts, from which it appears that on the 11th day of November, 1909, the parties entered into a contract for the construction of an electric sign forty feet in length and four feet in width, and to contain in illuminated letters the words, "Bernarr MacFadden Healthatorium." The work was to be done under this contract for the sum of $450. It was further stipulated that the Haller Sign Works performed the conditions of the contract and erected the sign upon the building in question in accordance with the requirements of the contract. The stipulation shows that the building upon which the sign was placed was on the corner of Forty-second street and Grand boulevard; that Forty-second street is a public thoroughfare of the city of Chicago and Grand boulevard is a pleasure driveway, containing a narrow park running down the center of the boulevard,

adorned with trees; that the building occupied by the defendant below was located about ten feet back of the sidewalk on Grand boulevard and about five feet from the sidewalk on Forty-second street; that the position of the sign on the top of the building was about fifty feet west of the extreme west part of the sidewalk on Grand boulevard and about thirty feet from the sidewalk on Forty-second street and one hundred feet above the level of the ground, and was so placed there in accordance with the requirements of the contract; that the sign extended east and west, parallel with Forty-second street, and contained no other words or figures except "Bernarr MacFadden Healthatorium," which words were illuminated with incandescent lights so as to be visible at night; that the building in question was used by the training school as a school of physical culture; that the sign was constructed of metal and was securely fastened and not liable to cause injury to persons on the street or boulevard; that the sign was delivered by the plaintiff below about January 5, 1910, and was used by defendant below for about six weeks, when the authorities of the city of Chicago notified the proprietors of the training school to remove the sign, on the ground that it had been constructed and erected contrary to an act of the legislature entitled "An act restricting the erection of structures for advertising purposes near parks and boulevards, and providing a penalty therefor," which act went into force July 1, 1909. (Laws of 1909, p. 290.) It was further stipulated that after the defendant below received this notice from the city of Chicago it notified the plaintiff below of the action of the city authorities and that the training school would be compelled to discontinue the use of the sign, and that thereafter the sign was not used but was taken down in pursuance of the action of the city authorities. Plaintiff below had nothing to do with taking the sign down and has not taken possession of any of the material out of which it was constructed. Upon these

stipulated facts the municipal court held that the act of the legislature of 1909 was unconstitutional and void and that it was no defense to the action, and rendered judgment for the contract price of the sign against the Physical Culture Training School, whereupon the training school sued out a writ of error from this court.

The only question presented for our determination is the constitutionality of the act of the legislature which was relied on below as a defense to this action. The act is as follows:

"Sec. 1. That it shall be unlawful for any person, firm or corporation, to erect, or cause to be erected, a structure of any kind or character within five hundred (500) feet of any public park or boulevard within the limits of any city in this State having a population of one hundred thousand (100,000) or more, for the purpose of placing advertisements of any kind or character thereon; and that all billboards and advertising signs of whatever kind or character that are occupying space contrary to the provisions of this act shall be removed within one year after the passage of this act.

"Sec. 2. Any person, firm or corporation violating the provisions of this act upon conviction thereof shall be subject to a fine of not less than fifty dollars ($50) nor more than five hundred dollars ($500.)"

Plaintiff in error concedes that it has no defense to the action if the above statute is unconstitutional and void. It is sought to sustain the validity of this act as a proper exercise of the police power of the State. The natural right every citizen has to use his property according to his own will is necessarily subject to the limitation that in such use others shall not be injured. All uses of property or courses of conduct which are injurious to the health, comfort, safety and welfare of society may be prohibited under the sovereign power of the State, even though the exercise of such power may result in inconvenience or loss to individu-

als. In this respect individual rights must be subordinate to the higher rights of the public. The power that the State may exercise in this regard is the overruling law of necessity, and is founded upon the maxim *salus populi est suprema lex.* The existence and exercise of this power are an essential attribute of sovereignty, and the establishment of government presupposes that the individual citizen surrenders all private rights the exercise of which would prove hurtful to the citizens generally. *City of Chicago* v. *Rogers Park Water Co.* 214 Ill. 212; *Mugler* v. *Kansas,* 123 U. S. 623.

While the general principle above announced is uniformally recognized, it is equally true that the owner of property has the right to make any use of it he desires that does not endanger or threaten the safety, health, comfort or general welfare of the public. It does not follow that because a statute has been enacted for the ostensible purpose of guarding the safety, health, comfort or promoting the general welfare, it must be accepted as a proper exercise of the police power of the State; nor can a statute which is, in fact, a proper exercise of such power be declared void merely because it results in circumscribing limits of individual conduct to narrower bounds. Necessarily, there are limits beyond which legislation cannot constitutionally go in depriving individuals of their natural rights and liberties. To determine where the rights of the individual end and those of the public begin is a question which must be determined by the courts. The constitution is the highest written law of the State. The courts must obey both the constitution and the statutes, but in case of conflict between the two the constitution must control and the statute must give way. When there has been an attempt to exercise the police power of the State by the law-making department of the government and the validity of such act is challenged as being an unreasonable invasion of private rights, the courts must, upon their own responsibility, de-

termine whether in the particular case the constitutional limits have been passed. *Sinking Fund cases,* 99 U. S. 700.

At an early date in the history of our country it was earnestly contended that to concede that the judicial department of the government could nullify the action of the legislative department by declaring its acts unconstitutional was inconsistent with the fundamental principles of our government and the independence of the three co-ordinate branches thereof. But this question was set at rest by the unanswerable logic of Chief Justice Marshall in *Marbury v. Madison,* 1 Cranch, 368. On page 388 the chief justice used the following language: "The powers of the legislature are defined and limited, and that those limits may not be mistaken or forgotten the constitution is written. To what purpose are powers limited and to what purpose is that limitation committed to writing if these limits may at any time be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished if those limits do not confine the persons on whom they are imposed and if acts prohibited and acts allowed are of equal obligation. It is a proposition too plain to be contested that the constitution controls any legislative act repugnant to it, or that the legislature may alter the constitution by an ordinary act."

It will be noted that section 1 of the statute under consideration makes it unlawful to erect a structure of any kind within five hundred feet of a public park or boulevard within the limits of any city having a population of 100,000 or more, for the purpose of placing advertisements of any kind or character thereon, and requires the removal of all bill-boards and advertising signs that are occupying space contrary to the provisions of the act within one year, and provides penalties for the enforcement of said act. The language of this act is prohibitive and applies to all kinds of structures that are erected within the prescribed limits, without reference to whether such structures are dangerous

or otherwise injurious to the public. It prohibits, indis-
criminately, every character of structure that may be erected
for advertising purposes within five hundred feet of a pub-
lic park or boulevard. Under this statute the owner of a
vacant lot within the prescribed limits would not be per-
mitted to erect a structure advertising his property for sale
or for rent. In other words, the prohibition of the statute
does not in any degree depend upon the character of the
structure or the advertisement that may be placed there.
In fact, the mere erection of a bill-board without any ad-
vertisement upon it whatever, if erected for the purpose of
placing advertisements thereon, would be in violation of
the statute. There is nothing inherently dangerous to the
health or safety of the public in structures that are properly
erected for advertising purposes.

Again, it is to be observed that the application of this
statute is limited to structures placed within five hundred
feet of boulevards and public parks. If the placing of such
structures within five hundred feet of boulevards and public
parks is dangerous or otherwise detrimental to the public
welfare, it is difficult to see why the same structures would
not be equally so if placed within the same distance from
any other public street or public grounds. A boulevard is
a public street which is usually of greater width than ordi-
nary business streets and is given a park-like appearance
by reserving spaces at the sides or center for shade trees,
flowers, seats, and the like, and ordinarily is not used for
heavy teaming. It is usually set apart for pleasure driving
rather than the general business purposes of an ordinary
street.

These suggestions lead unmistakably to the conclusion
that the statute in question is an attempt to exercise the
police power purely from æsthetic considerations, disassoci-
ated entirely from any relation to the public health, morals,
comfort or general welfare. However desirable it may be
to encourage an appreciation of the beautiful in art and to

cultivate the taste of the people of the State, still it has never been the theory of our government that such matters could properly be enforced by statute when not connected with the safety, comfort, health, morals and material welfare of the people. Advancement along these lines, whether wisely or unwisely, has, so far, been left to the schools and colleges and the influence of social intercourse. The citizen has always been supposed to be free to determine the style of architecture of his house, the color of the paint that he puts thereon, the number and character of trees he will plant, the style and quality of the clothes that he and his family will wear, and it has never been thought that the legislature could invade private rights so far as to prescribe the course to be pursued in these and other like matters, although the highly cultured may find on every street in every town and city many things that are not only open to criticism but shocking to the æsthetic taste. The courts of this country have with great unanimity held that the police power cannot interfere with private property rights for purely æsthetic purposes.

In *Crawford* v. *Topeka,* 51 Kan. 756, the Supreme Court of that State held that an ordinance prohibiting the erection of any structure for advertising purposes unless the same be placed at such a distance from the line of any street or sidewalk as shall exceed by at least five feet the height of such structure was held invalid as not being within the police power. The Kansas court in disposing of that case said: "All statutory restrictions of the use of property are imposed upon the theory that they are necessary for the safety, health or comfort of the public, but a limitation without reason or necessity cannot be enforced. In what way can the erection of a safe structure for advertising purposes near the front of a lot endanger public safety any more than a like structure for some other lawful purpose? * * * What reason is there for the surrender or loss of the use of that portion of the lot, or why

should the pasting of a piece of paper upon a secure enclosure make such loss necessary? Although the police power is a broad one, it is not without limitations, and a secure structure which is not an infringement upon the public safety and is not a nuisance cannot be made one by legislative fiat and then prohibited. (*Yates* v. *Milwaukee,* 10 Wall. 487; 1 Dillon on Mun. Corp. 374.)   *   *   * Perhaps regulations may be made with reference to the manner of construction so as to insure safety, but the prohibition of the erection of structures upon the lot line, however safe they might be, would be without legislative authority."

In the case of *People* v. *Green,* 85 N. Y. (App. Div.) 400, the court held that the legislature could not authorize a municipal corporation to prohibit the posting of advertisements upon private property fronting on or adjacent to public parks without the consent of municipal authorities in charge of such parks. On page 404 the court said: "The prohibition of such a use of property does not come within any of the definitions of the police power to which our attention has been called. While the legislature might prohibit such a structure as would expose those using the parks or streets to danger, or prevent the exhibits of immoral advertisements or pictures, or the use of property in a way that would endanger the health of the community, it has no power to prevent the owners of private property adjacent to a public park from using their property to advertise what they or others have to sell, so long as the public health or welfare is not affected, and being without power to prohibit, they are without power to require the consent of any public officer before the property can be used for that purpose. If this ordinance were enforced, no owner of a house could place upon it a notice that it was for rent or for sale without the consent of the park board. No person keeping a shop upon any street adjacent to the park could place his name upon the front of the building, or an advertisement

of the business that he carried on, without the consent of the department."

In *Bill-Posting Co.* v. *Atlantic City,* 71 N. J. L. 72, an ordinance making it unlawful to erect or place any fence, bill-board, sign or other structure used for the purpose of displaying advertisements within the limits of Atlantic City was held invalid because it was an attempt to appropriate private property to public use without compensation. The New Jersey court cited and approved the New York case of *People* v. *Green, supra;* and a like holding was made by the same court in *City of Passaic* v. *Patterson Bill-Posting Co.* 72 N. J. L. 285, where an ordinance was held invalid providing that bill-boards should not be constructed nearer than ten feet from the street line.

In the case of *Bryan* v. *City of Chester,* 212 Pa. 259, (61 Atl. Rep. 894,) it was held that an ordinance forbidding the erection of advertising structures on private property because they were unsightly was invalid, as an attempt to interfere with the lawful use of private property.

In *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348, (74 N. E. Rep. 601,) it was held that a rule of the Metropolitan Park Commission forbidding the maintenance of any business or ordinary sign, poster or advertisement upon any land or the outside of any building within such a distance of any public park or parkway as shall render the same plainly visible to the naked eye within the park or parkway, amounted to a taking of private property for public purposes and could not be justified under the police power, since its object was purely æsthetical. And the same principle was subsequently re-affirmed by the Supreme Court of Massachusetts in *Welch* v. *Swasey,* 193 Mass. 364. In the last case cited, that court, while adhering to its previous decision, sustained a statute which limited the height of buildings in Boston and provided different limitations for business and residential sections, and it was held that while the State could not compel the surrender

of private rights in property for purely æsthetic purposes, still, if the primary and substantive purpose of the legislation is such as to justify the act, considerations of taste and beauty may enter in as auxiliary. This case was subsequently affirmed by the United States Supreme Court in 214 U. S. 91.

The following additional authorities support the general proposition that the police power cannot be exercised by the State exclusively for the purpose of gratifying and cultivating æsthetic tastes: *State* v. *Whitlock,* 149 N. C. 543; *Varney & Green* v. *Williams,* 155 Cal. 318; *People* v. *Murphy,* 195 N. Y. 126; 21 L. R. A. (N. S.) 735; *Curran Co.* v. *Denver,* 47 Colo. 221; 27 L. R. A. (N. S.) 548.

In the case of *City of Chicago* v. *Gunning System,* 214 Ill. 628, this court had under consideration the validity of a city ordinance purporting to regulate the erection of signboards and bill-boards in the city of Chicago. Section 4 of that ordinance provided that no sign or bill-board should be erected upon any boulevard or pleasure drive, or in any street where three-fourths of the buildings in such street are devoted to residence purposes, without the consent, in writing, of at least three-fourths of the residents and property owners on both sides of the street in the block where it is desired to erect such board. This court held that section 4 of the ordinance was unreasonable and void, and on page 642 of the opinion it was said: "It seems to be an arbitrary restriction on the part of the city, depriving an individual property owner of the use of his property as he may choose, without any showing that such use would be injurious to others in the same vicinity. On the evidence before us that section must be held unreasonable and void." Section 5 of the ordinance then before the court provided that all signs and bill-boards erected before the passage of the ordinance, which exceeded one hundred square feet in area or were of a greater height than ten feet above the surface of the ground, should pay an annual license of

fifty cents per square foot, and in default of such payment such boards should be torn down. Again, referring to sections 4 and 5 of said ordinance, this court used the following language: "The purpose of sections 4 and 5 seems to be mainly sentimental, and to prevent sights which may be offensive to the æsthetic sensibilities of certain individuals residing in or passing through the vicinity of the bill-boards. The extreme restrictions placed on the erection and maintenance of such boards, and the license fee placed thereon, indicate that these sections were intended to be prohibitive rather than regulative, and are, in our judgment, unreasonable."

From the foregoing authorities the only conclusion that can be drawn is that the statute under consideration is invalid. Plaintiff in error has presented no case that is in conflict with the general rule deducible from the authorities above cited. The gist of the argument in support of this law is, that the police power ought to be extended, both by restriction and compulsion, to the promotion of purely æsthetic purposes, upon the ground that the general welfare of the public requires it. While the general welfare is recognized as one of the principal considerations which will justify an exercise of the police power of the State, still, it must be borne in mind that the general welfare of the State is promoted by according to each individual the largest degree of personal liberty that is consistent with the best interest of the public. In our opinion the statute in question is an unreasonable attempt to limit the proper use of private property, and is therefore unconstitutional and void.

The judgment of the municipal court will be affirmed.

*Judgment affirmed.*