# Standard Oil Company v. City of Bowling Green et al.

(Decided June 3, 1932.)

CHARLES G. MIDDLETON and LAURENCE B. FINN for appellant.

GEO. W. MEUTH and SCOTT & HERDMAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN—
Reversing.

In 1923 the appellant, Standard Oil Company, erected at the corner of High and Broadway streets, in the city of Bowling Green, a gasoline service station. The lot on which the appellant constructed this building was small, just large enough to accommodate the service station which was of the typical drive-in type built of brick and concrete, 14x21 feet in size, and with space for two pumps; the storage tanks being imbeded in the ground. The cost of the lot and building was about

$12,000. Since 1924 this service station has been operated by the appellant. On April 29, 1929, the city of Bowling Green enacted an ordinance entitled:

"An Ordinance establishing a residential zone or section of the City of Bowling Green, Kentucky, and prohibiting therein the establishment and operation of gasoline and oil filling stations and the sale of oil and gasoline."

Section 1 of the ordinance delimited the residential zone established which included the place where appellant has its gasoline service station. Section 2 of the ordinance reads:

"In said residential zone or district as set out in Section 1, it shall be unlawful to establish or operate a gasoline or oil filling station or to sell oil or gasoline therefrom; and all persons, firms or corporations are now prohibited from so doing."

The appellant continuing to operate its service station, a warrant was taken out in the Bowling Green police court against appellant's employees who were operating the station, charging them with a violation of the ordinance set out above. On a trial before the police court, the ordinance was held valid, and the employees of appellant were fined. It appearing that other warrants would be issued against appellant's employees because of the continuance of the operation of this service station, appellant brought this suit in the circuit court asking that the police court be enjoined from further prosecuting appellant's agents and servants because of their operation of the service station, and that it be adjudged that the ordinance of April 29, 1929, in so far as it applied to appellant's place of business, be held null and void. On the hearing before the chancellor, the appellant introduced a very large number of affidavits (the proof being taken in such fashion by agreement) to the effect that the place where the service station was located abutted on streets which were broad and wide; that the service station was so erected that its patrons had ample space to stop or park on the property of the appellant for the purpose of being served, and that they did not use the public highway except to approach and leave the station; that the station and its operation did not render any of the abutting streets unsafe or inconvenient for

public use or travel; that the station did not in any wise endanger or affect the health of the neighborhood in which it was located, or, indeed, of any of the citizens of the whole city of Bowling Green; that the station did not cause any discomfort to any of the neighbors or the citizens of Bowling Green or any inconvenience to them, and that it did not affect their morals, safety and/or public welfare. Affidavits to the foregoing effect were procured from 54 of the neighbors within the radius of 150 yards of the said station; there being only three residents of that area who declined to sign the affidavit, and the husband of one of these did sign it. There was no proof whatever offered by the city to controvert that offered by the appellant on this score; the city contenting itself with the legislative determination of its council that the prohibition of gasoline and oil service stations within the area in question was needed because of the need of protection to the safety, health, public morals, or general welfare of that community. The chancellor held the ordinance valid and refused the appellant the injunction it sought. From the judgment dismissing appellant's petition, this appeal is prosecuted.

At the outset it must be, as indeed it was and is, conceded that the city of Bowling Green, in the exercise of its police power, has the authority to pass a zoning ordinance reasonably necessary for the preservation of public health, morals, safety, and general welfare of the community. Metzenbaum, The Law of Zoning, passim; Village of Euclid, Ohio, v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Fowler v. Obier, 224 Ky. 742, 7 S. W. (2d) 219, 223. In the latter case, we said:

> "Generally speaking, the courts uphold such regulatory measures if they are related to health, safety, morals, and the general welfare of the community. Usually upon a strict scrutiny of such laws, if the courts find that they are not related in some way to health, safety, morals, and general welfare, they will be declared invalid as an unconstitutional exercise of power by the legislative branch of the government."

The phrase "general welfare," of course, is a very broad one, and it is quite apparent from even a casual reading of the cases bearing on zoning problems that the

element of "the protection of the value and usefulness of urban land and the assurance of such orderliness in municipal growth as will facilitate the execution of the city plan and the economical provision of public services" (quoted from Zoning—An Analysis of the Purposes and Legal Sanctions, by Edward D. Landels, American Bar Association Journal, March, 1931, page 163), comes within its purview. It is problematical whether æsthetic considerations do or not; the present state of the authorities perhaps being that they do not. See MacRae v. City of Fayetteville, 198 N. C. 51, 150 S. E. 810; City of Youngstown v. Kahn Bros. Bldg. Co., 112 Ohio St. 654, 148 N. E. 842, 43 A. L. R. 662; Haller Sign Works v. Physical Culture Training School, 249 Ill. 436, 94 N. E. 920, 34 L. R. A. (N. S.) 998.

The necessity for the exercise of the zoning power may be made to appear either from existing conditions or reasonable anticipation of future growth and development. It must be remembered, however, that in the Euclid Village decision the Supreme Court said in effect that, although it gave its validation to the fundamental theory and philosophy of zoning, yet it did not thereby intend to grant a blanket indorsement of every instance of zoning because, if and when a situation would be presented wherein zoning had been employed for an unwarranted purpose or in an unreasonable manner, the court would not approve thereof, but would exercise the right to declare the same unconstitutional. The court exercised this reservation which it retained to itself in the Euclid Village decision in the case of Nectow v. City of Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842, and again in State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U. S. 116, 49 S. Ct. 50, 73 L. Ed. 210. In those cases it was held that the governmental power to interfere by zoning regulations with the general rights of landowner by restricting the character of his use is not unlimited, and such restriction cannot be imposed if it does not bear a substantial and reasonable relation to the public health, safety, morals, or general welfare; and that the legislative determination of that question, while entitled to great weight and respect, is not conclusive, for, if it is manifest that the exercise of the power is arbitrary and unreasonable in the light of the actual facts of the case, the courts will interfere to prevent such exercise of arbitrary and unreasonable power. Thus in the Nectow case the facts as found by

the master disclosed that the locus in question was surrounded by industrial development; that it was better adapted for such development than a residential one into which the zoning ordinance in question sought to force it; that it was not needed to round out the adjacent residential zone; and that to force it into such zone would, despite the legislative mandate of the city of Cambridge, be an arbitrary exercise of power. The court enjoined the application of the zoning ordinance as to the locus in question. In the Roberge case, though other questions were involved, on the issue before us the facts disclosed that the home for aged poor which it was proposed to erect did not in fact affect the safety, health, morals, and general welfare of the community in question, and so, despite the legislative finding to the contrary as expressed in the regulations of the zoning ordinance in question, the prohibition against the erection of such home was enjoined. Thus we see, as well stated in the case of American Wood Products Co. v. City of Minneapolis, from the Eighth Federal Circuit Court of Appeals, 25 F. (2d) 657, 660:

> "The law is clear—its applicability to various circumstances and to situations brought about by the complexity of our civilization is ofttimes difficult. . . . So the real question here, in view of these decisions [of the Supreme Court], is whether the restriction imposed by the zoning ordinance as applied to the particular situation of each separate piece of property involved in the different causes bears any substantial relation 'to the public health, the public morals, the public safety or the public welfare in its proper sense'."

Pursuing this thought further, we find that, in the case of Village of Terrace Park v. Errett, 12 F. (2d) 240, 241, from the Sixth Federal Circuit Court of Appeals, a zoning ordinance prohibiting business in a residential district as established was held invalid as to the use of a lot within that area for a gravel pit. The court in its opinion quoted with approval from the case of Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A. L. R. 1321, the following:

> "One consideration in deciding whether limitations on private property, to be implied in favor of the police power, are exceeded, is *the degree* in which

the values incident to the property are diminished by the regulation in question, and this is to be determined from the facts of the particular case. . . . The general rule, at least, is that, if regulation goes too far it will be recognized as a taking for which compensation must be paid." (Italics ours.)

The court found that the facts disclosed in the record established that the prohibition of the use of the locus in question as a gravel pit would destroy almost entirely its substantial value, and that the health, comfort, and general welfare of the community would not be imperiled or substantially affected by the operation of the lot as a gravel pit despite the legislative determination involved in the passage of the ordinance to the contrary. On this finding the court held that the zoning ordinance in question, as applied to the particular locus in quo, was invalid. To the same effect, and with the same result, are the cases of City of Youngstown v. Kahn Bros. Bldg. Co., supra; Village of University Heights v. Cleveland Jewish Orphans' Home (C. C. A.) 20 F. (2d) 743, 54 A. L. R. 1008; MacRae v. City of Fayetteville, supra; Women's Kansas City St. Andrew Society v. Kansas City, Mo. (C. C. A.) 58 F. (2d) 593, and compare Oklahoma City, Okl., v. Dolese, 48 F. (2d) 734, a coalyard case from the Tenth Federal Circuit Court of Appeals. With these principles as developed from the cited cases in mind, let us now see what the facts are as disclosed by the record in the instant case. In the first place, we have here a gasoline filling station of as attractive design and appearance as these stations can reasonably be made as the pictures of it in the record show. It is located on a very small parcel of land owned by the appellant, for which a most substantial sum was paid, and the chief, if not indeed the almost entire, value of which consists of its availibility for a site as a gasoline service station or some business of like character. The service station had been conducted at the time this suit was brought for almost six years without giving any offense to the neighborhood, without any accident to the traveling public or otherwise having happened there, and with no intimation that it had in any wise affected the morals of the community. The economic and, indeed, aesthetic values of the land in the neighborhood, so far as they were affected by the proximity of this service station, had been fixed some six years before this zoning

ordinance was passed, and the continuance of the service station will not, so far as this record shows, affect adversely to a further degree the economic or aesthetic status of the neighborhood as it was at the time this zoning ordinance was passed. In the case of Kirkwood Brothers v. City of Madisonville, 230 Ky. 104, 18 S. W. (2d) 951, it was held that a gasoline and oil service station is not in itself a nuisance, but, on the contrary, is a lawful and necessary business. This is in accord with the overwhelming weight of authority. Of course, a thing may be a nuisance because of its inappropriate location. As has been stated in one of the cases, a pig in a pen may be no nuisance, although he certainly would be in the parlor. The courts are not blind to the fact that these gasoline service stations have become, at least in large centers of population, such as Bowling Green, very numerous, and that their operation over a long period of time has not been attended with any grave or serious effect on the morals, safety, or health of the community in which they are located. Perhaps it may be true, if the phrase ''general welfare'' is to include the protection of economic values of adjacent property, the establishment of new service stations may be prohibited in order to protect such value, but that is a different question from ousting a service station already there, and where, as here, the economic value of adjacent property has long since been fixed by the location of the station. It may, indeed, even be true that the abolition of such service stations from such a residential neighborhood would serve to improve the economic value of the territory left. But it is very doubtful that if this effort to increase or improve such values be the sole reason for the ousting and prohibition of such a business whether the city would have the right to so improve the economic values of the neighboring property at the expense of the economic value of the locus in question, especially where the degree to which the value of such locus in question would be thus affected would amount to great diminution and substantial annihilation. In the case before us, we have nothing to uphold this zoning ordinance except the legislative determination as expressed in the ordinance that it will subserve the safety, morals, health, and public welfare of the community. In the face of this legislative determination, we have the overwhelming proof of the actual facts to the contrary, accompanied by proof of an almost total annihilation of the value of the site

upon which the gasoline station is located, if this zoning ordinance as applied to this locus be upheld. In such a state of case, we believe that the principles of the Nectow, Roberge, Errett, Kahn Bros. Mfg. Co., Cleveland Jewish Orphans' Home, MacRae, Women's Kansas City St. Andrew Society, and Dolese cases apply rather than the principles of the cases of Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927, where the maintenance of a brick yard in a residential zone was forbidden; Reinman v. Little Rock, Ark., 237 U. S. 171, 35 S. Ct. 511, 59 L. Ed. 900, where the maintenance of a livery stable in a zoning area was forbidden; Bielecki v. City of Port Arthur (Tex. Civ. App.), 2 S. W. (2d) 1001, where a dance hall in a residential area was forbidden; State v. McShane, 159 La. 723, 106 So. 252, where the maintenance of a garage was forbidden; Pierce Oil Corporation v. City of Hope, Ark., 248 U. S. 498, 39 S. Ct. 172, 63 L. Ed. 381, where storage of oil and gas in large tanks near dwellings was forbidden (this case went off on a demurrer), and many others which might be cited, including the American Wood Products Company case, supra. In each of these cases there was substantial reason to believe that the legislative determination that the maintenance of the particular forbidden activity adversely affected the public health, safety, morals, or general welfare had not been overcome by the facts developed in the evidence. For instance, in the brickyard case, there was no countervailing proof that the soot, fumes, noise, and other offensive effects of the brickyard would and did affect the health and safety of the community. But even in that case the Supreme Court, while upholding the prohibition of the operation of the brickyard, inserted in its opinion the quaere whether the prohibiting of digging of clay from the situs of the brickyard for the purpose of making bricks and moving it from that section would not amount to an unconstitutional deprivation of property without due process of law. Thus we see that, in this Hadacheck case (and the same is true of the livery-stable case), the court gave some importance to the proposition that the business which was prohibited in the particular zone could be conducted elsewhere, and that the prohibition against conducting the business in the particular zone in question did not unduly adversely affect the economic value of such business. But the court reserved the question whether or not a zoning ordinance can unduly affect the

economic value of the situs upon which the business itself is conducted.

At all events, in the instant case, as we have seen, the maintenance and operation of the service station in question will not adversely affect the safety, morals, health, or public welfare of the community in which it is located; that the legislative determination to the contrary is completely refuted by the facts, which, save for the legislative determination, are uncontradicted in the record, and that the ousting of this service station will destroy about all the economic value the building and lot upon which it is located have. In such state of case, the zoning ordinance as applied to the particular locus in question is clearly invalid, and the chancellor should have so held.

His judgment is therefore reversed, with instructions to enter a judgment adjudging the ordinance in question as applied to the locus in question invalid, and an injunction enjoining the further prosecution under such ordinance of the appellant or its employees because of the continuance of the operation and maintenance of this service station.

Whole court sitting.