**Mrs. George W. TAYLOR, Appellant,**

v.

**William G. COBLIN, Chairman, etc., et al.,
Appellees.**

Court of Appeals of Kentucky.

Nov. 27, 1970.

William A. Young, Young & Williams,
Frankfort, for appellant.

Herbert D. Liebman, Allen Prewitt, Jr.,
Frankfort, for appellees.

EDWARD P. HILL, Jr., Chief Justice.

This appeal is from a judgment upholding
the action of the city council which upon
recommendation of the Frankfort-Franklin
County Planning Commission rejecting the
appellant's application for rezoning from
R–1 to C–2 the rear portion of a vacant lot
owned by her.

The lot in question is situated on the
south side of East Main Street (U. S.
Highway 60) where the highway intersects
U. S. Highway 460 and the Thornhill By-
pass. The lot is a triangular one with
frontage of 500 feet on the south side of
East Main Street. The east side of the
lot runs back a distance of 535 feet, and
the west side extends southwardly 662 feet.
The lot is only 79 feet wide at the rear or
south end. It is bounded on the west by
the Greenhill Cemetery and on the east by
a number of lots on which are situated small
residences. The only means of ingress
and egress the lot enjoys is by way of East
Main Street. No other street or alley is
available to the rear of the lot.

In 1952, the entire lot in question, in-
cluding other adjoining property, was clas-
sified R–1.

In 1954, a change was made in the clas-
sification of a portion of appellant's lot
along with other property on the south side
of East Main Street from Myrtle Avenue
extending as far east as Atwood Street.
The reclassification involved a strip of land
300 feet in width along the south side of
East Main Street. This resulted in the
classification of the front 300 feet of ap-
pellant's lot to C–2, leaving the rear portion
of appellant's lot in a R–1 classification.
This part of the lot is 362 feet in depth on
the west side, 235 feet deep on the east
side, and 79 feet wide on the rear.

A topographical map filed on the hearing
in this case shows that the front of appel-
lant's lot at the entrance to East Main
Street has an elevation of 502 and that the
rear of the lot has an elevation of 460,
which means that the lot is 42 feet higher
at the front than at the rear, or a grade of
about 9 percent.

At the time appellant filed her application
for a change in classification, she had a

prospective buyer for her whole lot who desired to purchase the lot for the purpose of constructing a shopping center thereon. Appellant filed with the Commission a plan for such shopping center. A hearing was held pursuant to notice to the public, at which time the Commission heard evidence pro-and-con on the issue of whether appellant was entitled to have the rear of her lot rezoned as aforesaid. Some of the residents along the east boundary of appellant's lot appeared at this hearing, some of whom testified formally in opposition to the request to rezone. Others voiced their protest more in the nature of a town hall debate. The sum and substance of the evidence protesting the desired reclassification was (1) increased traffic in the area would be hazardous to children; (2) there would be nuisances from drag races; (3) it would result in decreased values to homeowners; (4) decreased opportunity to build homes; (5) zoning commercial would cause residential property to become run down; (6) the litter would increase resulting in roaches, rodents, and other pests; (7) commercial zoning would increase the possibility of housebreaking and other criminal acts; (8) since police protection is already inadequate, zoning this area commercial would mean this protection would be zero; (9) the area is among four food stores; and (10) the area is already midway between two shopping centers—Eastwood Shopping Center and Winn-Dixie Shopping Center.

The appellant filed an aerial photograph, a topography map, and a number of photographs of the lot and of the general area. Appellant also introduced C. N. Hoover, a Frankfort real estate broker of 20 years' experience, who testified that the rear of appellant's lot had no access to any street or alley and that if it had access, the few residential building lots that could be obtained therefrom would not exceed $1,000 each in value. He stated, however, in his judgment, the cost of developing the rear portion of the lot would be prohibitive. He testified that in his opinion the best-use

classification of appellant's lot was C–2; that such reclassification would enhance the value of the adjacent property; that no residence had been constructed on East Main Street between Myrtle Avenue and Eastwood Shopping Center, approximately one-half mile, for more than 15 years; and that 20 new business establishments had come into existence in this limited area in the past 16 years.

Another real estate broker with 10 years' experience who testified for appellant was Don Hulette. He testified that it would cost approximately $7,500 to develop the rear portion of appellant's lot; that only six lots could be obtained as a result of such development; and that the top value of the lots after such development would be $1,200 each. He also testified that the best use to which this property could be put would be achieved under a C–2 classification.

During the hearing, the executive director of the Commission, Allan Alsip, frankly made the following potent comment, "I don't think it should be R–1 anyway."

As indicated above, the city council denied the application of the appellant to rezone. The Franklin Circuit Court affirmed the council. First let us mention the question of appellate review. Prior to this court's opinion in American Beauty Homes Corporation v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 379 S.W.2d 450 (1964), appeals in decisions in zoning change cases were tried "de novo," but in American Beauty Homes this court held "de novo" trials to be in violation of Section 27 of the Constitution of Kentucky.

It was pointed out in American Beauty Homes that there are three and perhaps other grounds for judicial review of administrative action: (1) where the action is in excess of granted power; (2) lack of procedural due process; and (3) lack of substantial evidentiary support. The court went on to say at page 457: "In the final analysis all of these issues may be

reduced to the ultimate question of whether the action taken by the administrative agency was arbitrary."

KRS 100.213 defines the conditions necessary to authorize or support a zoning-map amendment or land-use reclassification. This statute as amended in 1968 provides:

"Before any map amendment is granted, the planning commission or the legislative body or fiscal court must find that the map amendment is in agreement with the community's comprehensive plan, or, in the absence of such a finding, that one or more of the following apply and such finding shall be recorded in the minutes and records of the planning commission or the legislative body or fiscal court.

"(1) That the original zoning classification given to the property was inappropriate or improper.

"(2) That there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of such area."

The Commission, apparently in an effort to close the door to appellant's right of review, recited in the order that neither of the two conditions stated in KRS 100.213 applied in this proceeding.

█ If there is any substantial evidence to support the action of the administrative agency, it cannot be found to be arbitrary and will be sustained. Cf. Wells v. Fiscal Court of Jefferson County, Ky., 457 S.W. 2d 498, 501 (1970), where this court said: "[A]ction not supported by substantial evidence is arbitrary."

In the instant case inasmuch as the Commission denied the appellant's request for reclassification, our quest is now to determine whether or not the appellant's evidence considered along with the protest-ing testimony was so strong as to require a finding by the Commission that either of the conditions stated in KRS 100.213 existed in this case at the time of the trial before the Commission. In this connection, it is obvious that the numerous grounds of protest were emotional, unfounded, and frivolous.

At the expense of repeating, we pinpoint our question in the language of the statute: (1) Whether the original zoning classification given to such property was "inappropriate or improper?" or (2) Whether "there have been major changes of an economic, physical or social nature within the area involved which were not anticipated in the community's comprehensive plan and which have substantially altered the basic character of such area?" It is shown by the evidence, by maps, by photographs, and is undenied in the record that East Main Street from downtown Frankfort to the intersection opposite which the subject property is located is built along a high ridge, some of which breaks off suddenly on each side. This condition continues east of the intersection for some distance, including the lot of appellant, so that, as noted above, the appellant's lot is 42 feet lower in the back than in the front. It is clear from the evidence that the present classification of appellant's rear lot renders it practically worthless.

We do not consider that there is any substantial evidence whatever that the City or its inhabitants will suffer any impairment to health, safety, morals or the general welfare by the requested amendment.

When we contemplate the limited scope of judicial review of zoning orders, we are led to quote from the opinion in Hamilton Company v. Louisville & Jefferson County Planning and Zoning Commission, Ky., 287 S.W.2d 434, 436:

"Much has been written concerning the law of planning and zoning. As an extension of the exercise of the police power, the interference or regulation by public authority of the use of a citizen's

property must be for the superior interest and rights of the public, and the power must be exercised in a reasonable and fair manner for the promotion of the common good of a community as a whole, more particularly, it must bear a substantial relation to the public health, safety, morals or welfare. This is the purpose of the statute KRS 100.031. Standard Oil Co. v. City of Bowling Green, 244 Ky. 362, 50 S.W.2d 960, 86 A.L.R. 648; Shemwell v. Speck, Ky., 265 S.W.2d 468. The question in each case is whether the action of the Zoning Commission can be sustained upon that fundamental ground."

We do not intend to imply that the welfare of the landowner is paramount to that of the public. We said in Fried v. Louisville and Jefferson County Planning and Zoning Commission, Ky., 258 S.W.2d 466, that "the justification for zoning restriction is the greater benefit which accrues to the public as a whole, and hardship to an individual is not sufficient to show that the action was arbitrary or discriminatory." But in the instant case, we have not only hardship to the individual, but we do not have "greater" or any "benefit" to the "public as a whole" from the refusal to reclassify.

A right convincing argument might be made that the original classification on its face was tainted with arbitrariness from the mere fact that all the area south of East Main Street running back 300 feet to a parallel line south of East Main Street was classified commercial. The very nature of the original classification, its uniformity regardless of particular conditions, seems to us would suggest that the Commission keep an open mind and not an unfriendly attitude toward change.

In J. B. Blanton Company v. Lowe, Ky., 415 S.W.2d 376, this court upheld the appellee Commission and its order refusing to reclassify a lot south of the 300-foot zone involved in the present case. The Blanton case may be distinguished from the

present case in that the lot involved in Blanton at the time of the adoption of the original ordinance was not "facing the Frankfort-Versailles Road on the south side." Also there is a vast difference in the topography of the Blanton land and the present property. Furthermore, in 1952 and 1954 a residence was situated on the Blanton lot sought to be reclassified, and the lot joined a public, improved street.

We do not have a copy of the ordinance or master plan in the record. As a consequence, we are not familiar with the various classifications contained therein. It is not for this court to direct a particular classification. However, since we find that the refusal of the Commission to change the classification of appellant's rear lot from R–1 was arbitrary, we reverse the judgment of the trial court with direction that the Commission be ordered to classify appellant's entire lot under some classification other than R–1.

The judgment is reversed for proceedings consistent herewith.

MILLIKEN, OSBORNE, PALMORE, REED and STEINFELD, JJ., concur.

NEIKIRK, J., not sitting.