DEPARTMENT OF BANKING AND SE-CURITIES of Kentucky, and John L. Williams, Jr., Commissioner of Banking and Securities of Kentucky, Appellants,

v.

Jim C. COLEMAN, Roger Glass, Cloyd P. Bartley, Wallace Bartley, Ernest Lyons, John W. McCarley, Johnny Shaw, Royce Smith, and Weldon Tucker, Incorporators of Central State Bank, Inc., and Central State Bank, Inc., Appellees.

EDMONTON STATE BANK, a Kentucky Corporation, Appellant,

v.

DEPARTMENT OF BANKING AND SE-CURITIES of Kentucky, and John L. Williams, Jr., Commissioner of Banking and Securities of Kentucky, Appellees.

Court of Appeals of Kentucky.

Oct. 26, 1979.

Discretionary Review Denied March 25, 1980.

**896**

Kirtley B. Amos, Dept. of Banking and Securities, Frankfort, for Dept. of Banking and Securities of Kentucky and John L. Williams, Jr., Com'r of Banking and Securities of Kentucky.

John B. Baughman, William P. Curlin, Jr., Hazelrigg & Cox, Frankfort, for appellant, Edmonton State Bank.

William A. Young, Frankfort, for appellees, Jim C. Coleman, et al.

Before HOWARD, HOWERTON and WINTERSHEIMER, JJ.

HOWERTON, Judge.

The commissioner of banking and securities denied the application of Coleman and others for a new bank charter. He also denied the application of the Edmonton State Bank for a permit to establish a branch. Both applications came from Metcalfe County. The Franklin Circuit Court reversed the commissioner's ruling as to the new bank, and directed that a charter be

issued. The trial judge affirmed the decision to deny the branch. We now have an appeal from both decisions which have been consolidated into one action.

The Edmonton State Bank filed its application for a branch in December 1976. The incorporators of the proposed Central State Bank filed their application for approval of the articles of incorporation and for a charter in February 1977. Separate hearings were held, but each group protested the application of the other, and essentially the same information regarding the economic, population and banking situation in Metcalfe County was presented in both cases. The hearing officer used all of the information in making his findings and recommendations. There was no problem with any aspect of either application, except that on the whole, the hearing officer and the commissioner concluded that the prospects for success for the branch and the new bank would be only marginal, and the applications were therefore denied.

We have reviewed the record and heard the arguments, and we must affirm the decision of the commissioner and the trial judge regarding the denial of the branch bank application. As long as there is substantial evidence to support the commissioner's findings that there does not appear to be reasonable assurance of sufficient volume of business for a banking operation to be successful, we must affirm the decision. *Commercial Bank of West Liberty v. Hall*, Ky., 500 S.W.2d 77 (1973), and *Taylor v. Coblin*, Ky., 461 S.W.2d 78 (1970). The primary basis for desiring a branch was for public convenience, and there was little prospect that the addition of the branch with its accompanying expense could be offset by increased business.

KRS 287.050(1) provides for the establishment of a new bank, while KRS 287.-180(2) relates to the establishment of bank branches. The commissioner's duties under the two statutes are identical, and essentially the same standards are applicable to the

establishment of branches as well as new banks. *Williams v. Cumberland Valley National Bank; Brock v. Cumberland Valley National Bank*, Ky.App., 569 S.W.2d 711 (1978). That consolidated appeal also reiterates the doctrine that the standard for judicial review is the substantial evidence test.

■ The center of the controversy in the new bank case is that phrase and test in KRS 287.050(1) which reads in part, ". . . whether there is reasonable assurance of sufficient volume of business for the proposed corporation to be successful . . . ." The trial judge concluded that the commissioner had consistently considered profitability within three years of a new bank operation as being determinative of the probability of a "successful operation." The opinions on direct examination, concerning the range of anticipated profits after three years, varied from a high of $2,256.00 to a low of $248.00. The trial court concluded that since the predictions were for a profit, the commissioner's conclusion and denial were erroneous and arbitrary. We disagree and must therefore reverse the trial court.

The statute does not establish profitability during the first three years as the sole indicator of success. Although there were three estimates for positive profit in the third year of operation, the commissioner did consider the overall economic and demographic situation in Metcalfe County and concluded that there was not a reasonable opportunity for success in the new banking operation. There were already three banking offices in the county. This provided a low ratio of population to banking facilities for the county, and one or more additional facilities would substantially lower the ratio and jeopardize the chances for success. The evidence also indicated that the projected population figures for the county indicated a decrease, that a large number of Metcalfe County residents work outside the county, and that at least two factories in an adjoining county work on a direct deposit payroll system with banks in Barren County. The three projections of profitability reflect only marginal success with the high amount being $2,256.00 and the low amount being $248.00, but there was also uncontroverted testimony that with a change from 60% to 66% in the ratio of time deposits to demand deposits, there would be a loss of $5,412.00 in the third year. This fact seems very significant today with increasing depositor awareness and demand for interest earnings on deposits.

We must conclude that the commissioner's findings and conclusions were based on substantial evidence and were not arbitrary or capricious. The statute required him to inquire into the prospects for the successful operation of the proposed bank. It is obvious that the commissioner considered all of the evidence pertaining to the probable successful operation requirement and not merely the fact that there was some evidence that the new bank might be profitable within the third year.

The statute is the only existing guideline or regulation for determining whether or not to grant an application. Without more specific guidelines, past practices are important in determining if current actions are arbitrary, but the so-called three-year profitability criteria, when considered alone, ignores the past practice of considering all of the evidence pertaining to probable success. Here, there was sufficient evidence of possible failure to be considered along with the pro forma projections of earnings to support the denial of the application.

■ The success of banking establishments, new and old, is vital in our economy, and needless failures cannot be tolerated. Despite the fact that limited amounts of deposits are insured against failure, any bank failure has a detrimental effect on the economy as a whole as well as upon the stockholders, large depositors, and those sources which provide funding for the guarantees against losses of deposits. Except in cases where the commissioner's findings are

clearly erroneous and arbitrary, courts should be inclined to follow the expertise of the Banking and Securities Department in determining whether there is a reasonable assurance of sufficient volume of business for the proposed corporation to be successful. The reviewing court may not substitute its judgment for that of the commissioner. KRS 287.062(4).

The judgment of the trial court in *Edmonton State Bank v. Department of Banking and Securities, et al.*, is affirmed, and the judgment of the trial court in *Department of Banking and Securities, et al. v. Coleman, et al.*, is reversed.

All concur.