JACOB R. LEGUM *v.* JOHN J. CARLIN ET AL.

[No. 90, October Term, 1934.]

*Decided February 6th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, and MITCHELL, JJ.

*Wirt A. Duvall, Jr.,* with whom was *August A. Denhard* on the brief, for the appellant.

*Edward J. Colgan, Jr.*, with whom were *Karr & Colgan* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

The plaintiff, Jacob R. Legum (appellant), filed a bill of complaint to enforce a restrictive covenant in a deed to him, and, from a decree denying the relief sought, this appeal is prayed.

By deed dated February 12th, 1920, the Land & Loan Association of Ellicott City conveyed to the plaintiff a lot fronting 155½ feet on the southwest side of the Reisterstown Road in Baltimore City, the improvement thereon being known as 3420 to 3436. The deed contained the following covenant: "And further, that for and in consideration of the premises and the sum of $1 the receipt whereof is hereby acknowledged, the said Land and Loan Association of Ellicott City, a body corporate, for itself, its successors and assigns, does hereby covenant with the said Jacob R. Legum, his heirs and assigns, that it will not erect or allow to be erected any building whatsoever to be used as a public garage upon the following described land adjacent to the land and premises hereinbefore described." The restricted portion of the whole lot, part of which was conveyed to Legum, extends eastward from the lot conveyed to the intersection of Park Circle and the Reisterstown Road, and the parcels of the same, the use of which is complained of, are improved by Nos. 3400, 3402, and 3414, 3416, and 3418 Reisterstown Road. The building Nos. 3400-02 is owned by John J. Carlin, one of the defendants, Nos. 3414-3418 by Circle Bowling, Inc., defendant, conveyed to it by Carlin, and both owners have leased to the Ford Motor Sales Company, the other defendant.

The lease from Circle Bowling, Inc., to the Ford Motor Sales Company for Nos. 3414-18 provides that the premises shall not be used "for purposes other than those of the service station, sales rooms and similar purposes," and that from Carlin to the same lessee, that the premises

Nos. 3400-02 shall not be used "for purposes other than those of the sales room and similar purposes."

The testimony is that the building Nos. 3400-02 is used only as offices and a sales room, where new Ford cars only are on display. On this building is a large display sign reading, "Ford Motor Sales Company Service Department. We service all cars, lubricating and washing," which advertises the work done and to be done at Nos. 3414-18. There is no charge for storage unless cars taken in for repair or service are left for any length of time. As the company's manager said: "We repair our own cars and customers' cars, sell parts, lubricate cars and wash cars in this particular building."

Now these are the uses of both buildings which Legum complains are a violation of the covenant of his deed which forbids the use of the property adjacent to his on the southeast "as a public garage."

Although the deed to Legum was made by the Land & Loan Association of Ellicott City, he testified, and it is not denied, that he bought from Carlin. Whether he has any connection with Circle Bowling, Inc., does not clearly appear, though Legum's brother, A. M. Legum, a partner of the plaintiff in the automobile business, testified that Carlin told the plaintiff that unless he paid him more rent for the building on the restricted area, he was going to lease to the Ford Motor Company. Carlin did not testify in his own behalf, but there is enough in the record for us to say that the principals in this case are Carlin and Legum.

The rule of construction with respect to covenants restricting the use of real estate, as stated by Judge Digges in a leading case in this court, *Clem v. Valentine,* 155 Md. 19, 25, 141 A. 710, 712, is that "it must appear from the terms of the grant, or from the situation of the parties and the surrounding circumstances, that it was the intention of the grantor, when inserting the restriction, to create a servitude, right or equity which would inure to the benefit of the complainant's land, and equitably should be annexed to it as an appurtenance. *Beals v. Case,* 138

Mass. 138; *Hooper v. Lottman* (Tex. Civ. App.) 171 S. W. 270; *Stevenson v. Spivey,* 132 Va. 115, 110 S. E. 367, and cases there cited." And as said by Judge Offutt with respect to contracts generally in *Danzer & Co. v. Western Maryland R. Co.,* 164 Md. 448, 461, 165 A. 463, 468: "It is axiomatic that in the interpretation of a contract the intention of the parties must control. Where the intention is clearly and unmistakably manifested by the language used considered in connection with the subject-matter of the contract, it will be gathered from the words used. *Buffalo Pressed Steel Co. v. Kirwan,* 138 Md. 65, 113 A. 628. But where the contract is open to construction in determining its meaning, the court may consider the circumstances as the parties viewed them (*Phoenix Pad Mfg. Co. v. Roth,* 127 Md. 544, 96 A. 762), the subject-matter and the surrounding circumstances (*Ess-Arr Knitting Mills v. Fischer,* 132 Md. 8, 103 A. 91.)" See *Ferguson v. Beth-Mary Steel Corp.,* 166 Md. 666, 172 A. 238, 241.

When Legum bought the property, it was already under a lease from John J. Carlin and wife to Louis E. Lambert, dated December 15th, 1917, for two years, with the right of renewal for three more years. The property leased was described as "a certain garage situated on the northwest side of Reisterstown Road just north of Pimlico Circle, in the city of Baltimore." The tenant covenanted that he would "not use or permit the use of said building for purposes other than those of a garage, automobile repair shop and for a general automobile business"; the landlord, that he would "not erect or allow to be erected any automobile garage on the property now owned by the Landlord adjacent to the property hereby demised." Legum, with the purchase of the property, took an assignment of the Lambert lease and has, ever since, there conducted a general garage and automobile business. This all shows the situation with respect to which the parties dealt. Legum paid for the property $62,500, which is a lot of money, and not only got the real estate described in his deed and took over Lambert's

lease, the price for which does not appear, but, in addition, as part of the consideration, required a restriction on the neighboring property of his grantor, and the question here is as to the meaning of the restrictive words, "public garage," used in his deed.

All of the cases cited contain repetitions of the definitions of the lexicographers of the meaning of the word "garage," some of which are restricted to places for the storage of automobiles and others to every phase of the business, including storage, hiring, sales, servicing, and repairs, and the chancellor here had his troubles in defining a "public garage" and relied largely upon his own observation and experience.

The appellees put their reliance chiefly on the opinions of this Court in *Stubbs v. Scott,* 127 Md. 86, 95 A. 1060, and *Baltimore City v. Scott,* 131 Md. 228, 101 A. 674, and section 228, article 56 of the Code, construed in *Montgomery County Motor Co. v. State,* 147 Md. 232, 127 A. 637. In the first of these cases, *Stubbs v. Scott,* 127 Md. 86, 95 A. 1060, Scott had applied for a permit "to erect and conduct a salesroom and service station for the sale of automobiles, and for the other purposes incident to the business of such establishments." The application was refused, and he subsequently petitioned for a permit to erect a building to contain two storerooms, one of which was to be used for the sale of automobiles. The second application was denied, and on a writ of mandamus the action of the building inspector was reversed and the permit ordered, and the city appealed. This court did not, in that case, undertake to define a garage, public or private, unless it can be inferred from the discussion of the opinion in the case of *People ex rel. C. H. Realty Co. v. Stroebel,* 209 N. Y. 434, 103 N. E. 735. In that case the City of Utica had an ordinance providing that "no person, firm or corporation shall hereafter maintain or conduct a public garage for the storing, maintenance, keeping, caring for or repairing of automobiles or motor vehicles within the city limits, without permission of the superintendent of buildings." The application was for a

building to be used for the buying, selling, and otherwise dealing in automobiles, motorcycles, and other personal property, and was refused because the building superintendent said "that the fair intention * * * was to erect, maintain and conduct a public garage." The refusal of the permit was reversed on appeal. The opinion seemed to regard the definition of a public garage as contained in the Utica ordinance to be correct, but what was decided in the New York case, as in the case of *Stubbs v. Scott,* 127 Md. 86, 93, 95 A. 1060, was that an automobile sales room is not a garage or service station, and that if there was a conversion or extension of the business permitted into one forbidden, it could be reached afterwards, as it was in the second *Scott* case, 131 Md. 228, 101 A. 674.

The appellant in *Montgomery County Motor Co. v. State,* 147 Md. 232, 127 A. 637, 638, had been convicted for its failure to procure a license under the provisions of section 228, article 56 of the Code, which provided for the licensing of those who "shall keep a garage for the hire, storage or sale of automobiles," and defined a garage to mean "a place of storage for hire or a place where is kept for hire any automobile," etc., but said, "Wherever such garage has included within the building a machine shop, which machine shop is definitely defined by permanent partitions in the building, the space occupied by the same shall be exempted from taxation under this section." Of the question presented in that case, this court said "It seems to us that the court [the trial court] was led astray by assuming that the word 'garage,' in its popular acceptation, is applicable to a storeroom used exclusively for the sale of automobiles by the owner of the automobiles. We have been referred to no authoritative definition of the word which would naturally include such a place. It has been variously defined as follows: 27 *C. J.* 1107. 'A modern substitute of the ancient livery stable. *Smith v. O'Brien,* 46 Misc. 325, 94 N. Y. S. at page 674.' 'A stable for the storage of automobiles or other horseless vehicles. *Bourgois v. Miller,* 89 N. J. Eq. 285, 104 A. 383.' 'A building in which motor vehicles are stored and

cared for.' *Standard Dictionary*, 'A station in which motor cars are kept, sheltered, stored, repaired, cleaned, and made ready for use; also a place of private storage for a motor car; a stable for motor cars.' *Century Dictionary*. And garage keeper is defined in 27 *C. J.* 1107 as 'one whose business it is to keep automobiles for hire or to keep them stored ready for use or orders.' *Revenue Collector v. Berret,* 28 Can. Cr. Cas. at 316; *Smith v. O'Brien, supra,* 46 *Misc.* 325, 94 N. Y. S. 673. It will be seen that the legislative definition is in accord with the above."

It must be kept in mind, however, that legislatve construction and definition is confined to the statutes involved (*Marbury v. Mercantile Bldg. Co.,* 154 Md. 438, 443, 140 A. 836), the rule with respect to legislative interpretation, as adopted in *Montgomery County Motor Co. v. State* from 36 *Cyc.* 1105 and 1106, being: "The Legislature may define certain words used in the statute, or declare in the body of the act the construction to be placed thereon, and the courts are bound by such construction, and all other parts of the act must yield *(Farmers' Bank v. Hale,* 59 N. Y. 53)." Unless so confined, the Legislature would be usurping a function judicial in its character.

The net result of the decision cited was to hold, as was expressly done in *Montgomery County Motor Co. v. State, supra,* that an automobile sales room is not a garage, and, applying this rule to the case of the sales room of the Ford Motor Sales Company at No. 3400 and 3402 Reisterstown Road, the injunction prayed as to it was properly refused, except that it should be forbidden to display a sign advertising a service and repair shop at Nos. 3414-18, as none of the restricted property can be used to frustrate or defeat the appellant's restrictive covenant.

The defendants have the idea that the only thing connected or associated with the automobile business which they cannot do on the restricted land is to house or stable automobiles for the general public for hire or rent, and if this is all "public garage," as used in the deed to Legum, means, they are right. It is evident from the definitions

already given that the words may be so restricted in meaning, or may be and have been extended to include maintenance, care, washing, servicing, and repairs. There are specialists in the automobile business as there are in other lines of merchandising, and it is easy to start with a combination of all the things that may be done to or for an automobile and whittle them away until there is nothing left for the plaintiff's protection but a storage or housing business. But we are not restricted to the dictionary definitions of the words employed in the plaintiff's deed, among which there is adequate support for both contentions, for "the question is one of fact to be determined by the intention of the vendor and of the purchasers, and that it is to be determined upon the same rules of evidence as other questions of intention" (*Summers v. Beeler*, 90 Md. 484, 45 A. 19, 22; *Clem v. Valentine*, 155 Md. 19, 27, 141 A. 710), and, in trying to ascertain what the intention of the parties was the court should view the situation in the light of the circumstances then existing and known to the parties.

When this deed was executed, there was a lease on the property, which had nearly three years to run, in which there was a covenant by which the lessee agreed only to use the building for the purposes of a "garage automobile repair shop, and for a general automobile business," and by the lessor (Carlin) that he would "not erect or allow to be erected any automobile garage on the property now owned by the Landlord adjacent to the property" leased. Reading these covenants together, they meant, if they had any significance at all, that neither would do anything on the building leased and the contiguous property of the lessor that would interfere with the business of the other. Legum took an assignment of this lease, and, while the rule that the lesser estate was merged into the greater would apply, there was outstanding Carlin's covenant not to erect or allow to be erected on his adjacent property "any automobile garage," and Legum could keep such adjacent property out of the automobile business for the unexpired portion of the lease. It must be

apparent that the idea that both had in mind was that Legum was not only paying for the parcel of land and the building thereon, but that he was buying protection against competition for the business then being carried on in the building, and since continued, so far as he could get it from the adjacent or neighboring property of his grantor. According to the covenant of Lambert in his lease, it was understood that the business to be there conducted was "a garage, automobile repair shop and for a general automobile business," and that this covenant is reflected in the words "public garage" as used in the deed to Legum, and that the restrictive words in the lease and the deed, together with the character of the business then and since conducted in the property conveyed to Legum, convince us that the business carried on in Nos. 3414 to 3418 should be enjoined. This case will therefore be remanded for a decree denying an injunction as to the salesroom at 3400-02 Reisterstown Road, and granting an injunction as to Nos. 3414-18 Reisterstown Road, and forbidding display advertising of service, repairs, etc., at Nos. 3400 and 3402.

*Decree reversed, with costs to the appellant, and case remanded for a decree to conform with this opinion.*