## SCHAPIRO *v.* JEFFERSON ET AL.

[No. 42, October Term, 1953.]

*Decided December 9, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Eugene Hettleman* for appellant.

*Walter C. Mylander, Jr.*, with whom were *Reuben L. Uman, William Lovitt* and *Marshall A. Binder* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The question presented on this appeal is whether the vendor in a land instalment contract has any right to a deficiency decree after default by the vendees and a resale of the property under the Land Instalment Contracts Act. Code 1951, art. 21, secs. 118-124.

On May 11, 1951, Louis Schapiro contracted to sell to Renus Jefferson, Lillian Jefferson, his wife, and Annie Jefferson, his mother, a three-story house situated at 1018 South Sharp Street in Baltimore, subject to an annual ground rent of $96 to be created, for the sum of $6,500. The contract provides that $250 was paid at the signing thereof, an additional $100 is to be paid on June 11, 1951, and the balance is to be paid in instalments of $28 a week, beginning May 12, 1951, the payments to be applied by the vendor to payment of taxes, ground rent, insurance, interest, and principal.

We are concerned chiefly with the provision that upon default in any of the payments, the vendor shall have the option either (1) to declare the contract terminated, in which event the property shall revert to the vendor, and all payments made shall be considered as earnest money and liquidated damages and remain the property of the vendor, and the vendees shall immediately vacate the property, or (2) to consider the vendees as tenants from week to week for the rental of $28 a week, payable in advance.

Annie Jefferson, who resided at 1111 Sharp Street, entered into the contract to assist her son and his wife, who needed a home. They moved into the second floor and rented the first and third floors. After they had occupied the property more than a year, they were unable to continue the weekly payments, and they moved out of the house on August 4, 1952.

On September 5, 1952, the vendor served a notice on the vendees that they were $200 in arrears, and that the contract would terminate on October 6 unless they brought the payments to date prior thereto. On October 17 he instituted foreclosure proceedings under the Land Instalment Contracts Act. The property, subject to annual ground rent of $96, was advertised for sale at auction on November 12, and it was sold for $3,000. The sale was ratified on December 23. On February 11, 1953, the auditor filed a report showing the amount still due by the vendees to be $3,092.96. As there were no exceptions, the report was ratified February 25.

On February 26 the vendor petitioned the Court for a decree *in personam* for the amount of the deficiency. The vendees objected. At the hearing on the petition Annie testified that on the day Renus and Lillian vacated the house, she phoned the vendor that they were moving out, and that they were turning the property back to him. She testified that he came to see her and did not object in any way, but he asked her whether she would do him the favor of collecting the rents from the tenants on the first and third floors, and she agreed to do so. The tenants brought the money to her home, and the vendor came there to get the money. She further testified that, while she did not receive any written notice of the foreclosure proceedings, she knew of the sale of the property, as she saw the auction sign on the day it was posted on the house. Her daughter-in-law also testified that she saw the sign on the property in October, 1952.

The chancellor found that the vendees surrendered possession of the property, and that the vendor terminated the contract in accordance with its terms and was not entitled to a decree *in personam* under the contract. From the chancellor's order denying the petition, the vendor appealed here.

The Land Instalment Contracts Act, enacted by the Maryland Legislature and approved by Governor Mc-

Keldin on April 30, 1951, did not take effect until June 1, 1951, several weeks after the contract was entered into. Laws 1951, ch. 596, Code 1951, art. 21, secs. 118-124.

Section 121 of the Act provides that when the vendee is in default in the payment of any sum due under a land instalment contract, the vendor shall, as a condition to the exercise of his remedy, first serve written notice on the vendee of intention to terminate, at least 30 days before such action may become effective. This section prescribes what the notice shall state and how it must be delivered.

Section 123 provides that upon default and after notice to the vendee, the vendor, after filing an affidavit that Section 121 has been complied with, may make a sale of the property described in the contract, upon giving bond and complying with the requirements of Section 5 of Article 66 of the Maryland Code, entitled "Mortgages," and such sale shall be made in further compliance with Sections 7 to 14, inclusive, of Article 66. . Section 123 contains a proviso that this remedy in the nature of a foreclosure of a mortgage shall be the sole remedy of the vendor for repossession of property sold under a land instalment contract executed after June 1, 1951; and that as to such contracts executed prior to June 1, 1951, this remedy shall also be available in lieu of any summary remedies provided by law for landlord and tenant cases, which summary remedies are made inapplicable to actions arising out of such contracts.

It is clear that the Act authorizes the court to enter a decree *in personam* for a deficiency under a land instalment contract, as Section 123, which authorizes a sale in the event of default by the vendee, states that the sale shall be made in compliance with Sections 7 to 14, inclusive, of Article 66, entitled "Mortgages"; and Section 14 of Article 66 provides that where, upon a sale of mortgaged property the net proceeds of sale, after the cost and expenses are satisfied, shall not suffice to

pay the mortgage debt and accrued interest, the court may enter a decree *in personam* against the mortgagor for the amount of such deficiency, provided that the mortgagee would be entitled to maintain an action at law on the covenants contained in the mortgage for the residue of the mortgage debt remaining unpaid and unsatisfied by the proceeds of the sale.

It is unnecessary to consider any questions of constitutionality of the Act, because the vendor in this contract is not entitled to a deficiency decree. The contract stipulates how much the vendor shall be entitled to in the event of default by the vendees. The contract plainly provides that in the event of a default the vendor may declare the contract terminated, and all of the earnest money and weekly payments shall be considered as the vendor's liquidated damages. Thus the parties themselves, by their written agreement, duly signed and sealed, determined how much the vendor would be entitled to in event of default at any time.

The vendor relied on the decision of this Court in *Rogers v. Dorrance*, 140 Md. 419, 117 A. 564, 32 A. L. R. 573. The contract in that case was for the sale of a farm. It stipulated that in the event of default by the vendee, all sums paid on account of the purchase price as well as all buildings and crops on the farm should be forfeited to the vendors as liquidated damages. It was held in that case that the vendors were not precluded from relief by way of specific performance.

On the other hand, in *Hahn v. Concordia Society of Baltimore City*, 42 Md. 460, 466, where the complainants had exacted a stipulation to pay a specific sum as liquidated damages for any violation of the contract, the Court pointed out that the parties themselves had settled the question of what would be the damages resulting from breach of the contract. Judge Miller declared in the opinion of the Court:

> "Having thus by their own contract, made
> presumably with full knowledge of the means
> and ability of the defendant, and having fixed

by their own estimate the extent of injury they would suffer from a non-observance of this condition, and having indicated as clearly as if so stated in terms, that the only form in which they could seek redress and recover the stipulated penalty or forfeiture, was a court of law, the complainants are precluded from now resorting to a Court of Equity for relief by way of injunction, on the ground that a violation of this part of the contract would result in irreparable damage and injury to them."

This is an illustration of the doctrine that the rules for the construction of contracts are all subordinate to the cardinal principle that the intention of the parties, to be gathered from the whole instrument, must prevail unless it is inconsistent with some established principle of law. *Zittle v. Weller,* 63 Md. 190; *Hospital for Women of Maryland, for Use of Robert S. Green, Inc., v. United States Fidelity & Guaranty Co.,* 177 Md. 615, 11 A. 2d 457, 128 A. L. R. 931; *Rogan v. Baltimore & Ohio R. Co.,* 188 Md. 44, 52 A. 2d 261; *Sorensen v. J. H. Lawrence Co.,* 197 Md. 331, 79 A. 2d 382, 24 A. L. R. 2d 1047.

Where the intention of the parties is clearly and unmistakably manifested by their language considered in connection with the subject matter, the court ascertains their intention from their words, but where there is some uncertainty as to their meaning, the court should also consider the situation of the parties in the light of the surrounding circumstances and the object to be accomplished as viewed from the whole instrument. *Legum v. Carlin,* 168 Md. 191, 177 A. 287, 99 A. L. R. 536; *National Union Mortgage Corporation v. Potomac Consolidated Debenture Corporation,* 178 Md. 658, 16 A. 2d 866.

This contract, which was executed before the Land Instalment Contracts Act took effect, made no provision for a sale of the property by foreclosure and no provision for a deficiency decree. The circumstances sur-

rounding the execution of the contract strengthen the construction that it was the intention of the parties that the amount of liquidated damages in the event of default, as stipulated in the contract, would be the maximum that the vendor could obtain. It was pointed out that in the spring of 1951, when the contract was entered into, there was a shortage of houses for rent, and at that time there were also certain governmental restrictions upon landlords. The vendees were urgently in need of a house, and they agreed to pay an unusually high price for it. The vendor had several objects in view in drafting the contract as he did. First, it appears that a substantial weekly income was as attractive to him as immediate payment in full. But the vendees were not able to pay more than $350 in cash, which was less than 5 per cent of the purchase price. There is merit in the claim of the vendees that the vendor's object was not only to get a high price for the property, but also to relieve him of the possibility of being charged with maintaining substandard housing. In addition, the contract was drafted in such a way that the vendor could recover quick possession of the property in the event of the slightest default. The contract provided that the vendor could invoke any of the provisions of the law giving landlords the right to speedy recovery of possession of property occupied by tenants, including summary ejectment by order of the People's Court for non-payment of rent. In the light of these circumstances there can be no doubt that it was the intention of the parties that if the vendees should default, the vendor could declare the contract terminated, and he would be entitled to keep all the payments as his liquidated damages, but would not be entitled to any further damages.

For these reasons we conclude that the chancellor was correct in refusing to enter a deficiency decree.

*Order affirmed, with costs.*