Robert L. HILL and Emma Jo Hill,
Appellants,

v.

Ernest COOK, Appellee.

No. 2416.

Municipal Court of Appeals for the
District of Columbia.

Argued July 13, 1959.

Decided Dec. 15, 1959.

Richard S. T. Marsh, Washington, D. C., for appellants.

Victor A. DeLeon, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

These parties come here seeking different interpretations of their contract

which was executed in an unsuccessful attempt to resolve their several controversies. Appellants, hereinafter referred to as the purchasers, received a judgment of $585. They contend that the trial court's interpretation of their agreement was too broad in its scope, and therefore it wrongfully restricted their recovery. The argument of appellee, hereinafter referred to as the seller, is diametrically opposed to the purchasers' contention.

The purchasers and the seller entered into a contract, dated November 27, 1954, for the sale of a lot and a house being constructed thereon. Soon thereafter, a dispute arose over several items in the construction and a meeting to settle their differences was scheduled for August 19, 1955. Although it was not then arrived at, the settlement bears that date. The purchasers filed this suit in July 1958 alleging essentially three claims: (1) a breach of the August 19, 1955, agreement; (2) a breach of the original contract of sale [this claim was for "latent defects" allegedly discovered after settlement]; and (3) a breach of an F.H.A. warranty given on the house construction. Included within these claims were numerous disputed items set out in detail. Issues were joined and the trial court found that the claims alleged had been proved by a clear preponderance of the evidence. However, the court also found that all of the items referred to in the complaint were referred to in the August 1955 agreement and therefore the seller's liability was governed by the sum stated in that agreement. Judgment was entered accordingly.

The purchasers do not contend, of course, that the trial court erred in finding that they had proved their claims. Furthermore, the seller has not cross-assigned this as error so we accept the finding as cor-

rect. Our problem then is the interpretation of that agreement.

Because the real estate was in Maryland, the original agreement a Maryland contract and its performance there also, the trial court ruled that Maryland law governed all matters of substantive law. Since the parties do not argue otherwise, we accept that ruling here.

■ It is an axiom of Maryland law that the intent of the parties shall govern an instrument, and this intent must be received from the instrument.[1] However, when the words used admit of two meanings, extrinsic evidence is used and the court will look at the subject matter and surrounding circumstances to ascertain the correct meaning.[2] Although the face of this agreement is no model of clarity, it does become intelligible when seen in the light of the facts which caused its execution. As previously mentioned, soon after the November 1954 contract was executed several disputes arose. The improvements were not completed by February 15, 1955, as the contract specified, but the purchasers took possession two weeks later under a lease agreement not of significance here. On March 5 and 25, the seller submitted two supplemental statements for additional construction items. Their correctness was challenged. On August 4 and 15, the purchasers made additional complaints in letters to the seller. These complaints were challenged. At the August 1955 meeting the parties finally agreed to place their differences in three categories, namely: (1) those items which seller agreed to correct promptly; (2) those items which purchasers agreed to withdraw; and (3) those items about which there was no agreement. Once this had been accomplished, final settlement under the November 1954 contract was then made pursuant

1. Coopersmith v. Isherwood, 1959, 219 Md. 455, 150 A.2d 243, 246.

2. Coopersmith v. Isherwood, ibid.; Sperling v. Terry, 1957, 214 Md. 367, 135 A.2d 309; Schapiro v. Jefferson, 1953, 203 Md. 372, 100 A.2d 794, 797; Chesapeake & Potomac Telephone Co. of Baltimore City v. Murray, 1951, 198 Md. 526, 84 A.2d 870, 874.

to a further agreement of settlement. That settlement, made in December 1955 and back-dated to August 19, 1955, specifically incorporated by reference the four documents hereinabove referred to. The significant provisions of the agreement were as follows:

"This Agreement made this 19th day of August, 1955 by and between Robert L. Hill and Emma Jo Hill, his wife, hereinafter referred to as Purchasers and Ernest Cook, hereinafter referred to as Seller.

"Witnesseth, in consideration of Purchasers making full and final settlement under the terms of their contract with Seller dated November 27, 1954 prior to final acceptance by Purchasers of the improvements completed as provided by said contract and for other good and valuable considerations the parties hereto agree as follows:

"A. Seller shall forthwith deposit the sum of Five Hundred and Eighty-five and no/100 Dollars ($585.00) with County Title Company, Inc., (hereinafter referred to as Escrow Agent) which sum shall be held by said Escrow Agent until such time as the parties hereto can agree to the proper adjustment and settlement of the following matters:

\*   \*   \*   \*   \*   \*

"The parties agree that Escrow Agent shall not be required or for any reason become a party to any court action involving said escrow fund. Escrow Agent shall release the said escrow fund pursuant only to (1) subsequent agreement between the parties hereto (2) in accordance with a final court order directing the disposition of said escrow fund.

"The parties hereto agree that no court action involving the above-mentioned disputed items shall be instituted for a period of sixty (60) days follow-

ing the date of this Agreement and that thereafter either of the parties may institute any such court action that may seem proper, and that damages sought thereby shall not exceed the amount of said escrow fund.

"B. Seller agrees to promptly correct and remedy in workmanlike manner each of the following items appearing in the above-mentioned complaint letter of Purchasers dated August 15, 1955, subject to the facts stated in any particular item being in fact as stated (Seller agrees to make a prompt inspection of the disputed items and advise Purchasers of any alleged inconsistency between the facts and complaint): \*   \*   \*".

The trial court held that the escrow sum in section A applied to the entire agreement and governed the other allegations in the complaint, thus limiting recovery to that amount. The testimony concerning section A of the agreement was to the effect that the parties had never been able to agree upon the items therein. It is apparent then that the items about which no agreement had been reached on August 19, 1955, were the same items incorporated in section A. Therefore, the future tense used in the first paragraph of section A, as well as the limitation on damages in the last paragraph, is now clear. It means that the parties agreed to hold the sum in escrow until agreement was reached concerning the items in section A or until the sum was disposed of by court order. Furthermore, the restriction on recovery of damages was to apply only to the items about which disagreement continued. Understanding this, there is nothing in the surrounding circumstances of negotiation, nothing in the testimony other than self-serving statements, and, accordingly, nothing in the contract to justify applying the escrow sum as the limit of recovery on the entire document. Moreover, appellee testified that he " \*   \*   \* had corrected all the items which

the Hills complained of which were his re-sponsibility to correct \* \* \*." This obviously referred only to those items he had assumed the responsibility for correcting in August 1955, which, in turn, refers to and makes clear section B of the agreement. We feel the action of appellee speaks louder than his words in court and is consistent with our interpretation of the agreement.

If the rule that the intent of the parties shall govern is to mean anything, it means that the court should do nothing more by judicial decree than the parties intended to to do by contract. It follows that the trial court erred in its interpretation of the agreement. However, since the trial court found that the purchasers had proved their allegations, the judgment is affirmed insofar as it adjudicates appellants' right to recover $585 under section A of the agreement and adjudicates appellee's breach of promise concerning the items in section B. The case will be remanded on this point to ascertain damages suffered by the purchasers under section B.

We also feel the third court erred by ruling that the purchasers enclosed within the settlement agreement the complaint of "latent defects" and breach of the F.H.A. warranty. That holding did not have sufficient support from the evidence and on this question the case must be reversed and a new trial granted.[3] At trial the issue of the seller's liability vel non on these two points should also be reopened because the trial court's finding that purchasers had proved these latter two claims was made in conjunction with its erroneous construction of the agreement.

According, the judgment is reversed and the case remanded for proceedings not inconsistent with this opinion.

It is so ordered.

[3.] See generally, Kandalis v. Paul Pet Construction Company, 1956, 210 Md. 319, 128 A. 2d 345.